# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| KATHERINE LEACH, GARRY K. LEACH, MARK BROWDER, TERRI BROWDER, on behalf of themselves and those Similarly situation, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:24-cv-000885-ALM |
| GATEWAY CHURCH, ROBERT MORRIS, THOMAS M. LANE, KEVIN L. GROVE, STEVE DULIN, | § § § § | |
| Defendants. | § § | |

## GATEWAY CHURCH'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM AND BRIEF IN SUPPORT

Ronald W. Breaux
  Texas Bar No. 02937200
  Ron.Breaux@haynesboone.com
Bradley W. Foster
  Texas Bar No. 07283200
  Brad.Foster@haynesboone.com
Taryn M. McDonald
  Texas Bar No. 24088014
  Taryn.McDonald@haynesboone.com
Ryan Paulsen
  Texas Bar No. 24060397
  Ryan.Paulsen@haynesboone.com
Justin W. Manchester
  Texas Bar No. 24126965
  Justin.Manchester@haynesboone.com
**HAYNES AND BOONE, LLP**
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
214.651.5000 (phone)
214.651.5940 (fax)

Wendi L. Hodges
  Texas Bar No. 24045096
  Wendi@thechurchlawyers.com
Alison R. Haefner
  Texas Bar No. 24107796
  Ally@thechurchlawyers.com
**MIDDLEBROOK | GROUP, PLLC**
611 S. Main Street, Suite 500
Grapevine, Texas 76051
817.484.0214 (phone)
817.484.0194 (fax)

Shari D. Goggin
  Federal Bar No. 3169653
  sgoggin@rlattorneys.com
**RESNICK & LOUIS, P.C.**
1512 Center Street, Suite 100
Houston, Texas 77007
281.962.3676 (phone)

**COUNSEL FOR GATEWAY CHURCH**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

INTRODUCTION ............................................................................................................ 1

STATEMENT OF ISSUES ............................................................................................. 2

FACTUAL BACKGROUND ........................................................................................... 3

I.      Gateway Church is a large, nondenominational church founded and primarily
        located in Dallas-Fort Worth. ...................................................................................3

II.     Gateway embraces the biblical practice of tithing as one of its core purposes. ...................4

III.    Plaintiffs file this proposed class action seeking a refund of their tithing donations...........5

LEGAL STANDARDS ................................................................................................... 7

ARGUMENTS AND AUTHORITIES............................................................................ 9

I.      Plaintiffs' claims should be dismissed for lack of jurisdiction..............................................9

        A.      The "home state exception" of the Class Action Fairness Act eliminates
                federal jurisdiction over Plaintiffs' claims. ............................................................9

        B.      The ecclesiastical abstention doctrine independently bars consideration of
                Plaintiffs' claims. ...............................................................................................10

II.     Plaintiffs' fraud allegations should be dismissed because they fail the exacting
        pleading standards of Rule 9(b), and in any event, fail to state a viable claim. ..................15

        A.      The fraud claims lack the particularity required to survive dismissal...................15

        B.      Plaintiffs' fraud claim lacks a material representation on which they
                reasonably relied. ...............................................................................................18

        1.      Plaintiffs fail to plausibly allege justified reliance on the Allocation
                Statements. .........................................................................................................19

        2.      Plaintiffs fail to plausibly allege a material statement related to the Money
                Back Statements on which Plaintiffs reasonably relied.........................................22

        C.      Plaintiffs have not pled conduct relating to the Allocation Statements within
                the relevant statute of limitations........................................................................24

III.    Plaintiffs' breach of contract allegations fail to state a viable claim..................................26

        A.      Plaintiffs have not pled an enforceable contract. ..................................................26

        1.      Plaintiffs' contract claim based on the alleged Allocation Statements fails for
                lack of consideration. .........................................................................................26

        2.      Plaintiffs fail to show that the Money Back Statements constituted an offer or
                were supported by consideration. ........................................................................27

B.     Plaintiffs' claim of conspiracy to breach a contract is not cognizable under Texas law. ................................................................................................29

C.     Plaintiffs have not pled conduct relating to the Allocation Statements within the relevant statute of limitations............................................................29

CONCLUSION AND PRAYER ................................................................................ 30

CERTIFICATE OF SERVICE ................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Achee v. Port Drum Co.*,
  197 F. Supp. 2d 723 (E.D. Tex. 2002) ...............................................................24, 25

*AKB Hendrick, LP v. Musgrave Enters., Inc.*,
  380 S.W.3d 221 (Tex. App.—Dallas 2012, no pet.) ................................................. 19

*Alexam, Inc. v. Best Buy Stores L.P.*,
  2013 WL 1795956 (E.D. Tex. Apr. 10, 2013) ......................................................... 28

*Alexsam, Inc. v. Best Buy Stores LP*,
  2013 WL 1789573 (E.D. Tex. Apr. 26, 2013) ......................................................... 28

*Archer v. Tregellas*,
  566 S.W.3d 281 (Tex. 2018).......................................................................................29

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 7, 8, 18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................7, 8

*Block v. Tex. Bd. of Law Exam'rs*,
  952 F.3d 613 (5th Cir. 2020) ....................................................................................7

*Blocker v. State*,
  718 S.W.2d 409 (Tex. App.—Houston [1st Dist.] 1986, writ refused n.r.e.) ........................ 20

*Bob Davis Paint & Drywall Inc. v. Valspar Corp.*,
  452 F. Supp. 3d 589 (S.D. Tex. 2020) ......................................................................3

*Boggan v. Data Sys. Network Corp.*,
  969 F.2d 149 (5th Cir. 1992) ...................................................................................18

*Bolduc v. Amazon.com, Inc.*,
  2024 WL 1808616 (E.D. Tex. Apr. 25, 2024).....................................................7, 10

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ....................................................................................3

*Cunningham v. Matrix Fin. Servs., LLC*,
  531 F. Supp. 3d 1164 (E.D. Tex. 2021).....................................................................9

*Cypress Home Care, Inc. v. Qlarant Integrity Sols., LLC,*
  2020 WL 10317441 (E.D. Tex. July 2, 2020).....................................................24, 25

*In re Diocese of Lubbock,*
  624 S.W.3d 506 (Tex. 2021) ..............................................................................10

*Domingo v. Mitchell,*
  257 S.W.3d 34 (Tex. App.—Amarillo 2008, pet. denied) ......................................27

*DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.,*
  112 S.W.3d 854 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ..................23

*United States ex rel. Eichner v. Ocwen Loan Servicing, LLC,*
  2023 WL 1971264 (E.D. Tex. Feb 13, 2023) .........................................................8

*El Pescador Church, Inc. v. Ferrero,*
  594 S.W.3d 645 (Tex. App.—El Paso, 2019, no pet.) ...........................................12

*Elson v. Black,*
  56 F.4th 1002 (5th Cir. 2023) ..............................................................................8

*Eshelman v. True the Vote, Inc.,*
  655 S.W.3d 493 (Tex. App.—Houston [14th Dist.] 2022, no pet.) ...........21, 26, 27

*Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints,*
  551 F. Supp. 3d 1206 (D. Utah 2021) ..................................................................23

*Glass v. First United Pentecostal Church of DeRidder,*
  676 So.2d 724 (La. App. 3d Cir. 1996) ............................................................9, 12

*Grant Thornton LLP v. Prospect High Income Fund,*
  314 S.W.3d 913 (Tex. 2010) ...............................................................................19

*Hackfeld v. Ryburn,*
  606 S.W.2d 340 (Tex. Civ. App.—Tyler 1980, writ dism'd).................................20

*Hawthorne v. Couch,*
  911 So.2d 907 (La. App. 2d Cir. 2005)................................................................12

*Hollinger v. Home State Mut. Ins. Co.,*
  654 F.3d 564 (5th Cir. 2011)..........................................................................9, 10

*Holy Spirit Ass'n for Unification of World Christianity v. World Peace & Unification Sanctuary, Inc.,*
  2022 WL 969057 (M.D. Pa. Mar. 30, 2022) ........................................................15

*Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*,
    565 U.S. 171 (2012) ........................................................................... *passim*

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
    537 F.3d 527 (5th Cir. 2008) ....................................................................16

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
    546 S.W.3d 648 (Tex. 2018) ............................................................... *passim*

*Kling v. Hebert*,
    60 F.4th 281 (5th Cir. 2023) .......................................................................9

*Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*,
    331 F.3d 452 (5th Cir. 2003) ....................................................................29

*Legendary Lightning Grp., Inc. v. Optigenex, Inc.*,
    2015 WL 3942946 (E.D. Tex. June 26, 2015) ...........................................17

*Little v. Smith*,
    943 S.W.2d 414 (Tex. 1997) .................................................................... 24

*Marsh v. Lottery.com, Inc.*,
    2024 WL 4327461 (W.D. Tex. Aug. 28, 2024) ........................................29

*McRaney v. N. Am. Bd. of the S. Baptist Convention, Inc.*,
    966 F.3d 346 (5th Cir. 2020) ....................................................................15

*Medler v. Morris*,
    27 F.3d 1097 (5th Cir. 1994) ......................................................................8

*Menchaca v. Chrysler Credit Corp.*,
    613 F.2d 507 (5th Cir. 1980) ......................................................................4

*United States ex rel. Mitchell v. CIT Bank, N.A.*,
    2021 WL 3634012 (E.D. Tex. Aug. 17, 2021) ............................................7

*Myrhe v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l
Missionary Soc'y*,
    719 F. App'x 926 (11th Cir. 2018) ...........................................................15

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
    898 F.3d 461 (5th Cir. 2018) ....................................................................19

*Nix v. Major League Baseball*,
    62 F.4th 920 (5th Cir. 2023) .....................................................................19

*NLRB v. Catholic Bishop of Chi.,*
  440 U.S. 490 (1979) ................................................................................14

*Omni USA, Inc. v. Parker-Hannifin Corp.,*
  798 F. Supp. 2d 831 (S.D. Tex. 2011) ...................................................26

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
  591 U.S. 732 (2020) ................................................................. 11, 13, 14

*Papasan v. Allain,*
  478 U.S. 265 (1986) ..................................................................................8

*R2 Invs. LDC v. Phillips,*
  401 F.3d 638 (5th Cir. 2005) ...................................................................8

*Serbian E. Orthodox Diocese for U.S. & Canada v. Milivojevich,*
  426 U.S. 696 (1976) ...........................................................................11, 12

*Sheet Pile, L.L.C. v. Plymouth Tube Co., USA,*
  98 F.4th 161 (5th Cir. 2024) .............................................................29, 30

*Shell Oil Co. v. Ross,*
  356 S.W.3d 924 (Tex. 2011) ...................................................................24

*Smith v. KNC Optical, Inc.,*
  296 S.W.3d 807 (Tex. App.—Dallas 2009, no pet.) ...............................18

*Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,*
  219 S.W.3d 563 (Tex. App.—Austin 2007, pet. denied) ........................26

*Thomas v. Review Bd.,*
  450 U.S. 707 (1981) ............................................................................1, 14

*Tilton v. Marshall,*
  925 S.W.2d 672 (Tex. 1996) ...................................................................22

*Transp. Ins. Co. v. Faircloth,*
  898 S.W.2d 269 (Tex. 1995) .............................................................18, 22

*Trenholm v. Ratcliff,*
  646 S.W.2d 927 (Tex. 1983) ...................................................................18

*Tuchman v. DSC Commc'ns Corp.,*
  14 F.3d 1061 (5th Cir. 1994) ..................................................................17

*Via Net v. TIG Ins. Co.,*
  211 S.W.3d 310 (Tex. 2006) ...................................................................30

*Walker v. Beaumont ISD*,
  938 F.3d 724 (5th Cir. 2019) ................................................................................8

*Watson v. Jones*,
  80 U.S. 679 (1871) ...............................................................................11, 12, 13, 14

*West v. Triple B Servs., LLP*,
  264 S.W.3d 440 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ........................26

*Williams v. Fed. Nat'l Mortg. Ass'n*,
  2012 WL 443986 (N.D. Tex. Feb. 13, 2012) ........................................................29

*Williams v. WMX Techs., Inc.*,
  112 F.3d 175 (5th Cir. 1997) ........................................................................15, 16, 17

*Williamson v. Tucker*,
  645 F.2d 404 (5th Cir. 1981) ................................................................................7

**Statutes**

26 U.S.C. § 501(c)(3) ..........................................................................................24

28 U.S.C. § 1332(d)(4)(B) ....................................................................................9

TEX. BUS. & COMM. CODE §§ 26.01(a), (b)(6) ....................................................28

TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4) ..............................................24, 25

TEX. CIV. PRAC. & REM. CODE § 16.051 ........................................................29, 30

TEX. PROP. CODE § 163.003(3) ......................................................................21, 22

TEX. PROP. CODE § 163.004(a) ............................................................................21

**Rules and Other Authorities**

Fed. R. Civ. P. 9(b) ..............................................................................................8

Fed. R. Evid. 201(b) .............................................................................................3

Ken Walker, *Tithing: What should the church teach its members about giving?*, Baptist
  Press, July 11, 2003........................................................................................11

Merriam-Webster's Collegiate Dictionary (11th ed. 2003)..............................4, 27

RESTATEMENT (SECOND) OF CONTRACTS § 33(3) (1981) ......................................28

RESTATEMENT (SECOND) OF CONTRACTS § 71 cmt. c (1981) ................................28

RESTATEMENT (SECOND) OF CONTRACTS § 76 cmt. d (1981) .....................................................27

RESTATEMENT (THIRD) OF TRUSTS § 28 cmt. a (2003).........................................................20, 21

*Trust and Obey*, Discipleship Ministries of The United Methodist Church (Oct. 24, 2006) ............................................................................................................ 11-12

*Use of Tithe*, Seventh-Day Adventist Church (Oct. 14, 1985) .........................................................12

Defendant Gateway Church ("Gateway") hereby moves to dismiss Plaintiffs' Amended Class Action Complaint (the "Complaint") (Dkt. 9) for lack of subject matter jurisdiction and failure to state a claim.

## INTRODUCTION

For multiple reasons, the Court lacks jurisdiction over Plaintiffs' claims. First, the Complaint does not assert any federal claims, and Plaintiffs' attempt to invoke jurisdiction under the Class Action Fairness Act is flatly contradicted by the statute. Second, and more importantly, this is a religious dispute, and Plaintiffs' claims are barred by the First Amendment.

In a nutshell, this case is about the meaning of a religious term: tithing. Tithing is the religious practice of giving a portion of one's income (often one-tenth) to the church as an offering of faith, gratitude, and commitment to God. The practice is rooted in the Old Testament. *See Genesis* 14:20; *Numbers* 18:21–28; *Deuteronomy* 14:23, 28. Tithing is a profoundly spiritual issue for many faith traditions—including Gateway—with deep scriptural roots. It is a devotional practice, not a business transaction. Plaintiffs would have this Court parse communications made during a worship service for consistency with their preferred understanding of what constitutes a tithe and how tithing funds should be used. Any such inquiry is barred by the First Amendment. "Courts are not arbiters of scriptural interpretation." *Thomas v. Review Bd.*, 450 U.S. 707, 716 (1981).

Plaintiffs' claims suffer from myriad other deficiencies, but all of them stem from the same fundamental flaw—Plaintiffs are attempting to transform an internal church dispute into a class action lawsuit. The First Amendment protects the rights of church leaders to "decide for themselves, free from state interference, matters of church government as well as those of faith

and doctrine." *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171, 186 (2012). Plaintiffs' claims must be dismissed.

## STATEMENT OF ISSUES

Disgruntled by misconduct allegations that came to light this summer, Plaintiffs lashed out at Gateway and its former elders, seeking to claw back their freely given tithing donations. Relying on two vaguely alleged promises regarding the disbursement and refundability of tithing donations, Plaintiffs assert fraud and breach of contract claims that should be dismissed due to numerous jurisdictional and pleading defects.

*First*, Plaintiffs' claims run afoul of two independent jurisdictional bars. Plaintiffs assert jurisdiction under the Class Action Fairness Act, which expressly removes jurisdiction over claims where the primary defendants and more than two-thirds of the proposed class reside in the state where the claims were filed. That is the case here, where all the defendants and over 90% of Gateway's donors reside in Texas. Independently, the claims should be dismissed under the ecclesiastical abstention doctrine because they impermissibly delve into matters of religious doctrine (tithing) and internal church administration (disbursement of tithing funds) in violation of the First Amendment. Either one of these grounds is sufficient to dismiss the case outright without further analysis.

*Second*, Plaintiffs' fraud claims fail to meet the exacting standards of particularity required under Federal Rule of Civil Procedure 9(b). Established Circuit precedent requires specific allegations explaining the "who, what, when and where, and why" of fraud claims, but none of that is present here. Instead, Plaintiffs rely on vague, unsubstantiated statements, group pleading that lumps all defendants together without alleging their individual wrongdoing, a complete absence of

temporal context for the statements, and conclusory statements of scienter and intent unsupported by any facts supporting an inference of fraud. Any of these failings alone warrants dismissal of the fraud claims.

*Third*, Plaintiffs' fraud and breach of contract claims suffer numerous additional pleading defects requiring dismissal under Rule 12(b)(6). Plaintiffs pled a claim for conspiracy to breach a contract not recognized by Texas law. Claims based on allegations that Defendants failed to distribute 15% of tithing donations to "Jewish ministries" and "global missions" are based on events that occurred a decade ago—well beyond the four-year limitations period governing fraud and contract claims under Texas law. The fraud claims are based on allegations that fail to demonstrate a material representation or reasonable reliance. And the contract claims lack allegations establishing an actionable offer and consideration.

In sum, Plaintiffs' facially evident failure to clear these basic yet fundamental jurisdictional and pleading hurdles requires dismissal. Accordingly, the Court should grant this Motion and dismiss Plaintiffs' claims.

## FACTUAL BACKGROUND

## I.    Gateway Church is a large, nondenominational church founded and primarily located in Dallas-Fort Worth.

Gateway Church ("Gateway") is one of the largest nondenominational churches in the United States. Dkt. 9 at ¶¶ 3, 11, 13-14. Gateway was organized under Chapter 2 of the Texas Business Organizations Code as a Texas nonprofit religious organization. Ex. B-1 at 1.[1] As a

---

[1] Unless otherwise noted, the facts in this Background Section include the facts as pled in the Complaint, facts generally known within the jurisdiction of the Court, and documents "referred to in the plaintiff's complaint" that are "central to the [plaintiff's] claims." *Bob Davis Paint & Drywall Inc. v. Valspar Corp.*, 452 F. Supp. 3d 589, 596 (S.D. Tex. 2020) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)) (alteration in original); *see also* Fed. R. Evid. 201(b). As explained below, the Complaint references both Gateway's policies, *see* Dkt. 9 ¶ 72, and Gateway's website, *see id.* ¶ 21, and the statements therein are central to Plaintiffs' claims.

nondenominational church, Gateway is autonomously governed and independent of any denominational control. *Id.* at art. 2. Thus, the "governance of the Church is solely vested in the Board of Elders," the "functional equivalent of" a board of directors as required by the Texas Business Organizations Code. *Id.* at art. 6.01, 7.01.

Since Defendant Robert Morris founded Gateway on Easter Sunday twenty-four years ago, Gateway has grown significantly.[2] Today, Gateway has eleven campuses, nine of which are located in Southlake, Texas and the surrounding Dallas-Fort Worth metroplex.[3] Gateway's doctrinal beliefs vest all authority over the churches in a single Board of Elders. "The Church is governed by the five-fold ministry as outlined in Ephesians 4:11-12, the offices of Elder, as well as other offices mentioned in Scripture." Ex. B-1 at art. 1.06(b). "Church Policy is governed by Eldership authority, emphasizing the final authority of the Church Eldership." *Id.* at art. 1.06(c).

## II.    Gateway embraces the biblical practice of tithing as one of its core purposes.

As Plaintiffs correctly allege, tithing is a core aspect of Gateway's doctrine and teaching. *See* Dkt. 9 ¶¶ 15-16. A tithe is commonly understood as a tenth part of a congregant's income given to support the church. Merriam-Webster's Collegiate Dictionary, *tithe*, at 1312 (11th ed. 2003) ("[T]o pay or give a tenth part of esp. for the support of the church" and "a tenth part of something paid as a voluntary contribution or tax esp. for the support of a religious establishment."). Many

---

In any event, the Court may consider the bylaws and other extrinsic evidence in support of the Gateway's motion under Rule 12(b)(1). *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 512 (5th Cir. 1980) ("Although the allegations of a complaint are taken as true in a challenge to a plaintiff's right to any relief, they may be tested by extraneous evidence when the court's jurisdiction is attacked.").

[2] *See* Matt Kyle, *Gateway Church Parts Ways with Founding Elder Steve Dulin*, DALLAS MORNING NEWS (July 31, 2024), https://www.dallasnews.com/news/faith/2024/07/31/gateway-church-parts-ways-with-founding-elder-steve-dulin/.

[3] *Locations & Service Times*, GATEWAY CHURCH, https://gatewaypeople.com/campuses (last visited Nov. 12, 2024).

different churches and denominations practice tithing based on teachings found throughout the Old and New Testaments. *See, e.g.*, *Leviticus* 27:30; *Malachi* 3:8-10; *1 Corinthians* 16:1-4.

As the Complaint explains, Gateway's teachings regarding tithing are informed by its interpretation of the command in *Romans* 1:16 to spread the gospel "to the Jew first." Dkt. 9 at ¶ 20 & n.2 Many of Gateway's members subscribe to this doctrine. In FY 2023, approximately 22,000 congregants donated to Gateway in some way. Ex. A at ¶ 6. The overwhelming majority of these members were located around Gateway's Texas campuses: in FY 2023, 90% of donors—some 20,000 people—were residents of Texas. *Id.*

### III.  Plaintiffs file this proposed class action seeking a refund of their tithing donations.

Plaintiffs are a group of individuals who claim to have donated money to Gateway Church. Dkt. 1. They filed this action on October 4, 2024, seeking class certification for themselves and others similarly situated. *Id.* The Complaint alleges two causes of action—fraud and breach of contract—and related conspiracy claims against Gateway and four individual defendants ("the Former Elder Defendants") who previously held eldership and other leadership positions with Gateway. *See* Dkt.9 at 13-15.

Defendant Robert Morris is the former Senior Pastor and founder of Gateway Church.[4] The elders of Gateway Church accepted Morris' resignation in June 2024 after well-published allegations that Morris had committed sexual abuse forty years earlier. Mayorquin, *supra* note 4. The other three Former Elder Defendants are likewise no longer part of Gateway's leadership.

---

[4] Orlando Mayorquin, *Teax Megachurch Pastor Resigns After Sexual Abuse Allegations*, N.Y. TIMES (June 19, 2024), https://www.nytimes.com/2024/06/18/us/pastor-robert-morris-gateway-church.html.

Defendant Tom Lane left Gateway in 2023.[5] Defendants Kevin Grove and Steve Dulin left Gateway leadership in 2024. After Morris' resignation, Gateway launched an internal investigation into the allegations and requested that all long-time leaders—including Grove and Dulin—take a temporary leave of absence. *Id.* Dulin left during the investigation for unrelated reasons, *see* Kyle, *supra* note 2., and Grove likewise no longer serves as an elder of Gateway.[6]

Plaintiffs' claims rest on two categories of statements allegedly made by Defendants. Dkt. 9 at ¶¶ 68, 71, 77, 79.

**Allocation Statements.** Plaintiffs first point toward a vague category of alleged statements "that 15% of all tithe dollars went to global missions work via Gateway Global Ministries," including "the first 10%" to "Jewish ministries." Dkt. 9 at ¶¶ 19-20. The only direct evidence of this representation is a quote allegedly taken from Gateway's website: "'The first 15% of Gateway's tithe is set aside to support local, national, and international outreach efforts. Your generosity helps provide resources for ministry partners and people in need around the world.'" Dkt. 9 at ¶ 21.

**Money Back Statements.** The second category of allegations relates to a statement allegedly made by Morris and repeated by the other Defendants that tithing donors could request a refund of their donations. The only direct allegation of this alleged promise comes from a quote by Morris from a 2023 conference no plaintiff claims to have attended:

> I've told our church on multiple occasions, I've said to them . . . If you'll try it for one year—if you are not fully satisfied—at the end of that year, I'll give you your

---

[5] Matt Kyle, *Gateway Announces Four Elders to Step Down Temporarily at Law Firm's Suggestion*, DALLAS MORNING NEWS (June 30, 2024), https://www.dallasnews.com/news/faith/2024/06/28/gateway-announces-four-elders-to-step-down-temporarily-at-law-firms-suggestion/.

[6] Adrian Ashford & Matt Kyle, *Gateway Removes 4 Elders, Says They Had Information About Morris Abuse Allegations*, DALLAS MORNING NEWS (Nov. 2, 2024), https://www.dallasnews.com/news/faith/2024/11/02/gateway-removes-4-elders-says-they-had-information-about-morris-abuse-allegations/.

money back. With twenty-two years of church, no one has ever asked for their money back.

Dkt. 9 at ¶ 37, ¶ 20 n.1.

## LEGAL STANDARDS

When, as here, a motion to dismiss invokes multiple grounds for dismissal under Rule 12(b), "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613, 616-17 (5th Cir. 2020). Rule 12(b)(1) authorizes courts to dismiss a case when the district court lacks subject matter jurisdiction over the claims. *See Bolduc v. Amazon.com, Inc.*, 2024 WL 1808616, at *2 (E.D. Tex. Apr. 25, 2024). Motions under Rule 12(b)(1) may assert either facial or factual attacks on jurisdiction. *See United States ex rel. Mitchell v. CIT Bank, N.A.*, 2021 WL 3634012, at *2 (E.D. Tex. Aug. 17, 2021). A factual attack such as this one "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* As a result, (1) no presumption of truth attaches to Plaintiffs' pleadings, (2) the parties may submit evidence regarding jurisdiction, and (3) the Court is free to weigh the evidence and resolve disputed facts. *See id.*; *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). The plaintiff bears the ultimate burden to establish jurisdiction by a preponderance of the evidence. *CIT Bank*, 2021 WL 3634012, at *2. Should the Court determine it lacks jurisdiction, it need not address any other ground for dismissal raised by this Motion. *See Bolduc*, 2024 WL 1808616, at *3.

Alternatively, the Court should dismiss the Complaint for failure to state a claim as required by Rule 12(b)(6). The rule requires dismissal when a pleading fails to set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This

requires "more than labels and conclusions" or a "formulaic recitation of the elements." *Twombly*, 550 U.S. at 555 (internal alterations omitted). Factual allegations are taken as true, and the facts are construed in the light most favorable to Plaintiffs. *Walker v. Beaumont ISD*, 938 F.3d 724, 735 (5th Cir. 2019). But the Court need not accept "a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Nor must the Court give credence to "naked assertions devoid of further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (quotation and alterations omitted); *see R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (explaining that a court should neither "strain to find inferences favorable to" the pleading party nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

Plaintiffs' fraud claims also fail to meet the heightened pleading standard of Rule 9(b), which requires that "the circumstances constituting fraud or mistake" shall be "state[d] with particularity." Fed. R. Civ. P. 9(b). The particularity imposed by Rule 9 can only be met by providing "the essentials of the first paragraph of any newspaper story, namely the who, what, when, where and how." *Medler v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994). "[S]imple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Elson v. Black*, 56 F.4th 1002, 1009 (5th Cir. 2023). Failure to satisfy Rule 9(b) "authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6)." *United States ex rel. Eichner v. Ocwen Loan Servicing, LLC*, 2023 WL 1971264, at *4 (E.D. Tex. Feb 13, 2023).

## ARGUMENTS AND AUTHORITIES

I.    **Plaintiffs' claims should be dismissed for lack of jurisdiction.**

    A.    **The "home state exception" of the Class Action Fairness Act eliminates federal jurisdiction over Plaintiffs' claims.**

Plaintiffs assert jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") but in so doing ignore the "home state" exception, which "prevents a federal district court from exercising subject matter jurisdiction" when the primary defendants and two-thirds or more of the members of the proposed class all reside in the same state where the action was filed. *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (citing 28 U.S.C. § 1332(d)(4)(B)). Courts must apply this "mandatory" provision and dismiss the case when the preponderance of the evidence establishes both statutory requirements. *Id.* at 570-71.

Under Rule 12(b)(1), the evidence available for meeting this burden includes the complaint, undisputed evidence, and the Court's resolution of disputed facts. *Kling v. Hebert*, 60 F.4th 281, 284 (5th Cir. 2023); *see also Cunningham v. Matrix Fin. Servs., LLC*, 531 F. Supp. 3d 1164, 1169 (E.D. Tex. 2021). The Court enjoys wide discretion in determining what evidence to use in making jurisdictional determinations, *Hollinger*, 654 F.3d at 570-71, and is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Kling*, 60 F.4th at 284.

Applying these standards, the Court should dismiss the case for lack of jurisdiction because the Complaint and relevant evidence establish both home state exception requirements. *See Hollinger*, 654 F.3d at 570-71. *First*, Plaintiffs correctly allege that every defendant resides in Texas. *See* Dkt. 9 at ¶¶ 47-51. That necessarily satisfies the "primary defendant" prong of the exception. *See* 28 U.S.C. § 1332(d)(4)(B).

*Second*, Gateway's donor records establish that well over two-thirds of the proposed class members also reside in Texas. As demonstrated in the chart below, Gateway's records confirm that nearly all Gateway donors (91% on average over the last six years) reside in Texas. *See* Ex. A at ¶ 6. These figures are consistent with the geographical locations of Gateway's campuses and derive from Gateway's donor records, which include self-reported donor residency information gathered and retained pursuant to tax reporting requirements. *Id.* at ¶ 8.

|  | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 YTD |
|---|---|---|---|---|---|---|
| # of Texas Donors | 23,617 | 19,448 | 18,405 | 18,240 | 20,193 | 16,417 |
| # of All Donors | 25,661 | 21,460 | 20,710 | 20,378 | 22,340 | 17,690 |
| % of Texas Donors | 92% | 91% | 89% | 90% | 90% | 93% |

Given the "practical and reasonable" standard for assessing residency "at this preliminary stage," this evidence is enough to establish that the home state exception applies. *See Hollinger*, 654 F.3d at 572.

Because the home state exception applies, the Court must dismiss this Texas-centered case. *See Hollinger*, 654 F.3d at 570 (CAFA exceptions "designed to . . . allow[] state courts to retain cases when the controversy is strongly linked to that state").[7] Should the Court dismiss the case under CAFA, it need not reach the other dismissal grounds raised in this motion. *See Bolduc*, 2024 WL 1808616, at *3.

## B.    The ecclesiastical abstention doctrine independently bars consideration of Plaintiffs' claims.

The Court should alternatively dismiss the case for lack of jurisdiction based on the ecclesiastical abstention doctrine because Plaintiffs' claims will require the Court to entangle itself

---

[7] To be clear, Gateway's First Amendment defenses apply equally in both state and federal court. *See In re Diocese of Lubbock*, 624 S.W.3d 506, 514 (Tex. 2021) ("Because courts are prohibited from risking judicial entanglement with ecclesiastical matters, if the substance and nature of the plaintiff's claims are inextricably intertwined with matters of doctrine or church governance, then the case must be dismissed." (citation omitted)).

impermissibly in questions of religious doctrine and internal church administration affecting Gateway's mission.

Ecclesiastical abstention flows from interlocking protections of the First Amendment embodied in both the Free Exercise and Establishment Clauses. *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 746 (2020). The Free Exercise Clause guarantees the freedom of churches "to decide matters 'of faith and doctrine' without government intrusion." *Id.* (quoting *Hosanna-Tabor*, 565 U.S. at 185). Relatedly, the Establishment Clause forbids "any attempt by government to dictate or even to influence such matters." *Id.* As a result, courts lack jurisdiction over claims regarding "'theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them.'" *Serbian E. Orthodox Diocese for U.S. & Canada v. Milivojevich*, 426 U.S. 696, 724 (1976) (quoting *Watson v. Jones*, 80 U.S. 679, 733 (1871)).

Plaintiffs' claims require dismissal because they involve matters of religious doctrine and internal church governance. Plaintiffs' fraud and contract claims center on the religious doctrine of tithing. *See* Dkt. 9 at ¶¶ 9-10, 53-55. Tithing is the ancient religious practice of giving a portion of one's income to the church, not only as an act of charity, but also of faith, trust, and obedience to God. This understanding of tithing as an act of devotion and trust in God is shared across Christian denominations. For example, Southern Baptists treat tithing as an act of faithful stewardship that demonstrates "trusting [God] to take care of their needs." Ken Walker, *Tithing: What should the church teach its members about giving?*, Baptist Press, July 11, 2003. For members of the United Methodist Church, tithing "reflects our trust in God and our belief that God truly knows what is best for us." *Trust and Obey*, Discipleship Ministries of The United Methodist

Church (Oct. 24, 2006). For Seventh-day Adventists, tithing is "an act of worship." *Use of Tithe*, Seventh-Day Adventist Church (Oct. 14, 1985).

As these authorities demonstrate, "[t]he issue of tithing is at its core a purely ecclesiastical matter." *Hawthorne v. Couch*, 911 So.2d 907, 910 (La. App. 2d Cir. 2005); *see also El Pescador Church, Inc. v. Ferrero*, 594 S.W.3d 645, 658 (Tex. App.—El Paso, 2019, no pet.) (recognizing tithing as a "scriptural concept" that is "uniquely ecclesiastical"). Gateway bylaws and Plaintiffs' allegations confirm as much. Collecting and distributing tithing donations is one of the central "purposes" of Gateway and, according to Plaintiffs, the subject of numerous sermons based on scripture. *See* Ex. B-1 at art. 4(d), (f); Dkt. 9 at ¶¶ 16, 20 & n.2. As such, complaints regarding tithing "fall outside of the Court's jurisdiction." *Glass v. First United Pentecostal Church of DeRidder*, 676 So.2d 724, 735 (La. App. 3d Cir. 1996). Yet Plaintiffs' claims will require this Court to determine whether tithing, doctrinally a gift to God through the church, *see Malachi* 3:8-10, may be refunded if the donor later expresses dissatisfaction—as though tithing were just another product subject to return or exchange in case of defect. *See* Dkt. 9 at ¶¶ 10, 37-41, 54, 75-80.

Plaintiffs' claims also directly impinge on the ability of church elders to set church policy regarding the receipt and allocation of tithing donations. Longstanding Supreme Court precedent recognizes and protects the right of churches "to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations, and officers within the general association." *Watson*, 80 U.S. at 729 (quoted by *Hosanna-Tabor*, 565 U.S. at 201)). "When this choice is exercised . . . the Constitution requires that civil courts accept [ecclesiastical tribunals'] decisions as binding upon them." *Milivojevich*, 426 U.S. at 724-25.

Gateway has exercised that right through its bylaws. *See* Ex. B-1. Under those bylaws:

- Gateway "is autonomous and maintains the right to govern its own affairs," *id.* at art. 2;

- Gateway policy "is governed by Eldership authority," *id.* at art. 1.06(c);

- Gateway's "Eldership" has "final authority" over church policies, *id.*;

- It is "essential to the life of the Church that scriptural patterns" of discipline and oversight "be exercised by the leadership of the Church," *id.* at art. 1.06(d);

- Collection and distribution of tithing funds is one of the central "purposes of this Church," *id.* at art. 4(d), (f);

- Disputes "between members and the Church leadership related to Church activities and Church administration" must be approached in a spirit of good faith cooperation, *id.* at art. 6.08;

- Questions regarding internal church administration, including "questions of Church property, or with respect to any other matter that shall arise concerning the Church, its internal workings, and its governance" are decided by the Board of Elders, *id.* at art. 7.22.

Under both Supreme Court precedent and Gateway bylaws, church members agreed to submit to the decisions of Gateway's leaders regarding matters of internal governance, such as the distribution of tithes. *See Hosanna-Tabor*, 565 U.S. at 201 ("'All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it.'") (quoting *Watson*, 80 U.S. at 729); Ex. B-1 at art. 6.03(c). But now that they are dissatisfied with the decisions made by the Former Elder Defendants regarding the disposition of tithing donations, Plaintiffs ask this Court to intrude and dictate those decisions based on Plaintiffs' preferences. The First Amendment bars this Court from doing so. *See Our Lady of Guadalupe*, 591 U.S. at 747 (First Amendment preserves "the general principle of church autonomy" including "independence in matters of faith and doctrine and in closely linked matters of internal government").

Plaintiffs' claims raise additional questions this Court lacks jurisdiction to answer. For example, Plaintiffs claim that 15% of tithing donations were not made to "Jewish ministries" and

other "global missions work." Dkt. 9 at ¶¶ 19-20, 70. This will necessarily require the Court to analyze Gateway's internal tithing distribution decisions and evaluate whether recipients qualify as "Jewish ministries" and "global missions"—determinations this Court is ill-equipped to make. *See Thomas*, 450 U.S. at 715-16. Plaintiffs also admit that tithing refunds are "not permitted under the Church rules," a policy they use to bolster their fraud claim. *See* Dkt. 9 at ¶¶ 41, 59. By so doing, they are asking this Court to override Gateway's policy in favor of their own, court-dictated and administered policy. *See Hosanna-Tabor*, 565 U.S. at 201 ("[I]t would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed") (internal quotation omitted).

Under the Constitution, Gateway has broad autonomy in conducting its internal affairs. "[A]ny attempt by [the] government to dictate or even influence such matters" violates the First Amendment. *Our Lady of Guadalupe*, 591 U.S. at 746. Indeed, even "the very process of inquiry" into a religious entity's internal affairs "may impinge on rights guaranteed by the Religion Clauses." *NLRB v. Catholic Bishop of Chi.*, 440 U.S. 490, 502 (1979). The wisdom behind these fundamental rights is manifest when considered in the litigation context. Permitting the case to proceed beyond dismissal dramatically multiplies the intrusive reach into ecclesiastical spheres—discovery, trial testimony, jury deliberations—all of these and more will require the Court to distinguish between appropriately secular topics and forbidden religious inquiry and entanglement. That is why, for more than 150 years, the Supreme Court has consistently held that "civil courts" have "no jurisdiction" to decide any matter that is "ecclesiastical in its character." *Watson*, 80 U.S. at 733. Because Plaintiffs' claims impermissibly require this Court to address and resolve

doctrinal questions and intrude on Gateway's internal decisions, policies, and governance, the Court should dismiss the case under the ecclesiastical abstention doctrine.[8]

**II.     Plaintiffs' fraud allegations should be dismissed because they fail the exacting pleading standards of Rule 9(b), and in any event, fail to state a viable claim.**

Plaintiffs' threadbare allegations of "misrepresentation and fraud" are deficient as a matter of law and should be dismissed for two independent reasons: (1) they fail the pleading standards of Rule 9(b), and (2) they do not state a viable claim for relief as required by Rule 12(b)(6).

**A.     The fraud claims lack the particularity required to survive dismissal.**

The Court should dismiss because Plaintiffs failed to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Rule 9(b) applies "with force, without apology," thus, any one of these reasons—and certainly all of them together—require dismissal. *See Williams*, 112 F.3d at 178.

*First*, Fifth Circuit law requires allegation of specific statements contended to be fraudulent, but Plaintiffs provide only vague allegations regarding the Allocation and Money Back Statements. *See* Dkt. 9 at ¶¶ 9-10, 18-19, 21, 37-38, 41, 68, 71. And the only specific statements Plaintiffs offer directly contradict their claims. For example, they quote the Gateway website as stating that 15% of tithing donations "support *local*, *national*, and international outreach efforts."

---

[8] The Fifth Circuit has not determined whether the ecclesiastical abstention doctrine serves as a jurisdictional bar requiring dismissal under Rule 12(b)(1) or as an affirmative defense requiring dismissal under Rule 12(b)(6), but the weight of federal authority supports a motion to dismiss for lack of subject matter jurisdiction. *Compare, e.g., McRaney v. N. Am. Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 348 n.1 (5th Cir. 2020) *with Myrhe v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 F. App'x 926, 928 (11th Cir. 2018) (affirming dismissal of claims involving church doctrine for lack of subject matter jurisdiction); *Holy Spirit Ass'n for Unification of World Christianity v. World Peace & Unification Sanctuary, Inc.*, 2022 WL 969057, at *6 n.13 (M.D. Pa. Mar. 30, 2022) ("the court will join the majority of courts to have considered the issue and will treat the ecclesiastical abstention doctrine as a jurisdictional issue under Rule 12(b)(1)"). In either case, the substance of the argument is the same—the First Amendment bars the plaintiffs' claims. Out of an abundance of caution, Gateway asserts its ecclesiastical abstention argument under Rule 12(b)(1) or alternatively under Rule 12(b)(6).

Dkt. 9 at ¶ 21 (emphasis added). So Gateway could comply with this express statement and still fall afoul of Plaintiffs' unsupported allegation of a funding promise to "global" missions. Similarly, Plaintiffs quote a money-back statement made by Robert Morris to a conference that none of them claim to have heard. Dkt. 9 at ¶ 37. Plaintiffs' amorphous allegations simply do not provide the specificity required by Rule 9(b). *See Williams*, 112 F.3d at 180 (references to generic, unattributed statements failed to satisfy Rule 9(b)).

*Second*, Fifth Circuit precedent requires allegations that specifically identify the speaker and meet the stringent Rule 9(b) standards as to *each defendant*, but Plaintiffs repeatedly lump all defendants together without differentiation or explanation of each defendant's independent wrongdoing. Thus, Plaintiffs allege that "Robert Morris and Gateway leaders" made the Allocation Statements. Dkt. 9 at ¶ 9; *see also* ¶¶ 19(same), 28 (same), 36 ("Robert Morris, Tom Lane, and other named Defendants" discussed the 15% donation program), 68-69 (mechanically listing the named defendants or referring to the "Gateway leaders" as making the Allocation Statements). Similarly, Plaintiffs complain of "Defendants' repeated representations" regarding a tithing refund before claiming that "Defendants" later "stonewalled and ignored" those who requested a refund. Dkt. 9 at ¶¶ 10, 37-39. And Plaintiffs provide no allegations that each defendant separately and independently possessed a knowledge of falsity and intent to deceive. Plaintiffs' "group pleading" fails to provide the particular pleading regarding particular defendants required by Rule 9(b) and controlling precedent, requiring dismissal. *See Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 533-34 (5th Cir. 2008) (rejecting "group pleading" for scienter requirements); *Williams*, 112 F.3d at 179-80 (failure to provide specific statements made by specific defendants "fatal" to plaintiffs' claims).

*Third*, Fifth Circuit cases require a clear statement of when and where each alleged fraudulent statement was made, but Plaintiffs provide neither detail. Plaintiffs frequently refer to alleged statements without any mention of when or where they were made. *See* Dkt. 9 at ¶¶ 9-10, 18, 38, 71. In other instances, they provide only nebulous references to statements made "for years," "on multiple occasions," "time and time again," or "many" times. *See* Dkt. 9 at ¶¶ 19, 37, 41, 68. Other than a single reference to a statement on the Gateway website, the Complaint is devoid of any reference to where any of these alleged statements were made. *See* Dkt. 9 at ¶ 21. The absence of these required details warrants dismissal. *See Williams*, 112 F.3d at 179-80 (dismissing claims based on alleged statements that failed to specify the time or place the statements were made).

*Fourth*, the Fifth Circuit requires an explanation of why the alleged statements are fraudulent, but Plaintiffs never progress beyond bare assertions of knowledge and fraudulent intent. *See, e.g.*, Dkt. 9 at ¶¶ 9, 38, 41, 70, 72. And even these check-the-box allegations are made merely "on information and belief." *See, e.g.*, Dkt. 9 at ¶¶ 9, 70. Such conclusory allegations are not "entitled to a presumption of truth." *Legendary Lightning Grp., Inc. v. Optigenex, Inc.*, 2015 WL 3942946, at *4 (E.D. Tex. June 26, 2015). Nor do they satisfy the requirements for pleading scienter, which "requires more than a simple allegation that a defendant had fraudulent intent." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Because Plaintiffs failed to "set forth specific facts that support an inference of fraud," their fraud claim should be dismissed. *Id.*

**B.    Plaintiffs' fraud claim lacks a material representation on which they reasonably relied.**

Not only do Plaintiffs fraud claims fail Rule 9(b), but they also fall short of the more lenient plausibility standard imposed by Rule 8 because they fail to assert multiple required elements under Texas law. *See Iqbal*, 556 U.S. at 678. To state a fraud claim under Texas law, Plaintiffs must prove six elements: (1) a material representation; (2) "that was false; (3) that, when the speaker made it, the speaker knew that was false or made it recklessly without knowledge of its truth and as a positive assertion;" (4) that the speaker made to induce the other party to act; "(5) that the other party acted in reliance on it;" and (6) that the statement caused the plaintiff's injury. *Boggan v. Data Sys. Network Corp.*, 969 F.2d 149, 151–52 (5th Cir. 1992) (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)).

A "material representation" is a statement which a "reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. App.—Dallas 2009, no pet.). "[A] pure expression of opinion will not support an action for fraud." *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995). Texas courts evaluate whether a statement is a statement of fact or statement of opinion based on the circumstances in which the statement was made; relevant factors include "the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future." *Id.*

Further, Texas courts have framed the requirement that plaintiffs rely on a statement as comprising two subparts: "the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable." *JPMorgan Chase Bank, N.A. v. Orca*

*Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (citing *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010)) "Justifiable reliance 'usually presents a question of fact,' but 'the element can be negated as a matter of law when circumstances exist under which reliance cannot be justified.'" *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 474 (5th Cir. 2018) (quoting *JPMorgan Chase Bank*, 546 S.W.3d at 654); *see also Nix v. Major League Baseball*, 62 F.4th 920, 931 (5th Cir. 2023) (affirming dismissal at the Rule 12(b)(6) stage because the plaintiff could not plead justified reliance as a matter of law). Plaintiffs fail to allege justified reliance as a matter of law when they have knowledge of facts contradicting the alleged misrepresentation, *see N. Cypress*, 898 F.3d at 475, or contractual terms contradict the oral representation, *see JPMorgan Chase Bank*, 546 S.W.3d at 658. Texas courts charge parties to a transaction with "knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated." *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 232 (Tex. App.—Dallas 2012, no pet.).

Here, Plaintiffs allege that the Allocation and Money Back Statements constitute two separate, material representations. Dkt. 9 at ¶¶ 68, 71. Considered in context, neither of these statements demonstrate a material representation upon which Plaintiffs reasonably relied.

### 1. Plaintiffs fail to plausibly allege justified reliance on the Allocation Statements.

As explained above, Plaintiffs have not clearly identified what statement they relied on in forming their belief that 15% of Gateway's tithes would go to certain global missions. The closest they come is a statement on Gateway's website which states: "The first 15% of Gateway's tithe is set aside to support local, national, and international outreach efforts." Dkt. 9 at ¶ 21. But that is only part of the story. As Gateway's online giving portal on the same website demonstrates, donors

have the option to donate a general tithe or condition their gift to a certain type of ministry—such as "Missions – Jewish Ministries."[9] Plaintiffs never alleged Gateway misallocated tithing funds that were designated to specific ministries. To the contrary, Plaintiffs expressly predicate their claims on Gateway's overall revenue. *See* Dkt. 9 at ¶ 27.

This option to designate tithes and other donations to specific ministries confirms that Plaintiffs were not reasonably justified in relying on general statements of how Gateway hopes to allocate unconditioned gifts. These donation options provided by Gateway are well established in the law governing charitable institutions.

*First*, givers may give tithes without conditions. It is blackletter law that "[a]n outright devisee or donation to a . . . charitable institution, expressly or impliedly to be used for its general purposes, is charitable but does not create a trust." *See* RESTATEMENT (THIRD) OF TRUSTS § 28 cmt. a (2003). Thus, under Texas law, Gateway was and is free to allocate these tithes to any cause that supports its doctrinal and religious missions. *Cf., e.g.*, *Blocker v. State*, 718 S.W.2d 409, 415 (Tex. App.—Houston [1st Dist.] 1986, writ refused n.r.e.) ("The property deeded by Hammond to HCM, without any express or contrary limitation, was nevertheless subject to the implicit limitation of use for educational purposes within the meaning [of the nonprofit's corporate purpose].")); *Hackfeld v. Ryburn*, 606 S.W.2d 340, 342 (Tex. Civ. App.—Tyler 1980, writ dism'd) ("As the term 'church' imports an organization for religious purposes, a gift to a church or a church society by name, without declaration or restriction as to the use to be made of the subject matter of the gift, must be deemed to be a gift for the promotion of the purposes for which the church was organized.").

---

[9] *Gateway Church*, GATEWAY CHURCH, https://pushpay.com/g/gatewaypeople?src=fp&lang=en (last visited Nov. 15, 2024) (emphasis added).

*Second*, Gateway *does* provide givers the option to condition their gifts. "[C]ertain restricted gifts to charitable corporations should be treated like charitable trusts." RESTATEMENT (THIRD) OF TRUSTS § 28 cmt. a (2003). Thus, in the context of conditioned donations, Gateway is considered a trustee that must uphold the intent of givers who choose to condition their gifts. *See Eshelman v. True the Vote, Inc.*, 655 S.W.3d 493, 501 (Tex. App.—Houston [14th Dist.] 2022, no pet.) ("All of Eshelman's claims against them are premised on his unsupported allegation that TTV did not abide by the conditions on his contribution."). Under Texas law, such a trust is created according to the terms of the gift instrument. *See* TEX. PROP. CODE § 163.004(a) ("Subject to the intent of a donor expressed in a gift instrument, an institution, in managing and investing an institutional fund, shall consider the charitable purposes of the institution.").

Here, the gift instrument is Gateway's drop-down menu on its website. *See* TEX. PROP. CODE § 163.003(3) ("'Gift instrument' means a record or records, including an institutional solicitation, under which property is granted to, transferred to, or held by an institution as an institutional fund."). But Plaintiffs never allege that they selected one of these conditions. Further, Plaintiffs never allege any facts plausibly suggesting that Gateway in any way misallocated funds that were given subject to these conditions.

Thus, the terms of the gift instrument contradict the Allocation Statements. While it is true that Gateway has a stated goal of allocating 15% of its general revenue to "local, national, and international outreach efforts" with "the first 10% . . . to 'Jewish ministries,'" a reasonable listener would know that these statements were not legally binding on Gateway when that listener affirmatively elected *not* to provide a conditioned donation. At minimum, the drop-down menu for conditional gifts put Plaintiffs on constructive notice that they needed to condition their gifts if

they wanted Gateway to allocate the funds to a specific set of causes. After all, the ability to condition a gift "was essentially equivalent to stating" that 100% of some tithes would go to specific causes, while the Allocation Statements implied "just the opposite"—that Gateway would deduct at least some percentage from every tithe and direct those funds towards Jewish and global ministries. *JPMorgan Chase Bank*, S.W.3d at 659. "The representation in this case is . . . directly contradicted by the language" of the gift instruments by which Plaintiffs donated their tithes, precluding Plaintiffs from pleading justified reliance as a matter of law. *See id.*

> **2.    Plaintiffs fail to plausibly allege a material statement related to the Money Back Statements on which Plaintiffs reasonably relied.**

The most specific statement alleged in the Complaint is a statement Morris made at the 2023 Tikkun Global Conference (which the named Plaintiffs do not allege to have attended) in which Morris stated that he would give listeners their money back "if [they were] not fully satisfied . . . at the end of [one] year." Dkt. 9 at ¶¶ 20 & n.1, 37. But considered in context, the thrust of Morris' statement was not the possibility of a refund, but the ecclesiastical concept of divine blessing. The central point of the sentence that included an alleged promise is "if you are not fully satisfied" and Morris underscored that fact with the concluding sentence: "*With twenty-two years of church, no one has ever asked for their money back.*" *Id.* (emphasis added).

A reasonable listener, seated at a religious conference, and hearing Morris' statements from a pulpit would understand that this statement as Morris' opinions of the religious blessings that flow from the act of tithing. Such an opinion is not a material statement on which Plaintiffs may rest their fraud claim, *see Transp. Ins. Co.*, 898 S.W.2d at 276, much less a fraud claim falling within the jurisdiction of a civil court. *See, e.g.*, *Tilton v. Marshall*, 925 S.W.2d 672, 678 (Tex. 1996) ("[M]ost courts would probably hold that a claim of fraud is not actionable if based upon the

representation that, in exchange for a monetary contribution, God will cure a sick donor's illness."); *Gaddy v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 551 F. Supp. 3d 1206, 1221-22 (D. Utah 2021) ("Where a plaintiff brings fraud claims against a church based on religious issues of faith or doctrine, the First Amendment applies as a defense.").

The Money Back Statements fail for the additional reason that Plaintiffs cannot justifiably rely on those statements in the face of at least two written policies that directly contradict those statements. "[R]eliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *JPMorgan Chase Bank*, 546 S.W.3d at 658 n.2 (quoting *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)).

Individuals who pay tithing through Gateway's online website are presented with terms that clearly state: "Once a payment is processed, a payment cannot be cancelled by us *or the Organization* and we have no obligation to honor any request to stop, correct, reverse or recall a payment."[10] Consistent with that notice, Gateway bylaws prevent the church from accepting a gift conditioned on a money-back promise. Specifically, article 5(c) states: "The Church shall not accept any gift or grant if the gift or grant contains major conditions which would restrict . . . the Church's religious, charitable, or educational purposes or if the gift or grant *would require serving a private as opposed to a public interest*." Ex. B-1 at art. 5(c) (emphasis added). If Gateway were to refund tithing payments to Plaintiffs, Gateway would be spending donated funds on the private interests of Plaintiffs. After all, as a nonprofit organization, Gateway may only distribute funds according to its charitable purpose and may only make gifts to other nonprofit organizations. *See*

---

[10] *PushPay User Agreement*, PUSHPAY (last updated Aug. 28, 2024) https://pushpay.com/legal-center/terms/.

*id.* at art. 4(d)-(e). The Plaintiffs are not authorized charitable organizations, *see* 26 U.S.C. § 501(c)(3), so Gateway cannot unconditionally distribute money to them.

Members of the putative class acknowledged the terms and conditions that unambiguously stated "a payment cannot be cancelled by us or the Organization" when they made their donations, and the meaning of that provision is confirmed by bylaws that were available for review by any Gateway member. Plaintiffs' alleged reliance was unjustified as a matter of law. *See JPMorgan Chase Bank*, 546 S.W.3d at 660.

### C.    Plaintiffs have not pled conduct relating to the Allocation Statements within the relevant statute of limitations.

To the extent Plaintiffs have successfully alleged a fraud claim arising from the Allocation Statements, the claims are nonetheless barred by limitations. Under Texas law, a plaintiff must bring a fraud claim "not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). "Generally, in a case of fraud the statute of limitations does not commence to run until the fraud is discovered or until it might have been discovered by the exercise of reasonable diligence." *Little v. Smith*, 943 S.W.2d 414, 420 (Tex. 1997). Courts in this district follow "Texas's established practice that a cause of action for fraud accrues when a claimant learns of their injury and its cause." *Cypress Home Care, Inc. v. Qlarant Integrity Sols., LLC*, 2020 WL 10317441, at *5 (E.D. Tex. July 2, 2020). Plaintiffs discover their injury either at the point they become aware of the conduct, *see Achee v. Port Drum Co.*, 197 F. Supp. 2d 723, 738 (E.D. Tex. 2002), or when the conduct is discoverable in available records, *see Shell Oil Co. v. Ross*, 356 S.W.3d 924, 929 (Tex. 2011).

Here, Plaintiffs failed to plead any fraudulent conduct relating to the Allocation Statements that occurred within the last four years. Plaintiffs base their Allocation Statements claim on the

statements of an unnamed CPA who Gateway hired as a pastor in July 2011. *See* Dkt. 9 at ¶ 24. The anonymous CPA allegedly observed that Gateway's Global Ministries department gave away less than $3 million in the year 2014—a year in which Gateway collected around $120 million. *Id.* at ¶ 27. Even assuming these allegations are true—and they are not—the complained-of action occurred more than ten years ago, well outside the four-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). Further, the claimed conversations between the unnamed CPA and Defendants Lane and Grove all occurred prior to and during the CPA's exit interview at the end of his employment with Gateway in 2014. *See* Dkt. 9 at ¶¶ 29-32.

Whatever allegedly fraudulent conduct these conversations revealed, that revelation occurred in 2014 at the latest. Texas's discovery rule for fraud claims does not apply when the plaintiffs have actual knowledge of the injury. *See Achee*, 197 F. Supp. 2d at 738. Here, the unnamed CPA was aware of his allegations during his tenure with Gateway from 2011 to 2014. *See* Dkt. 9 at ¶¶ 24-27. Further, the Named Plaintiffs never allege that they recently discovered the anonymous allegations. To the contrary, Plaintiffs candidly admit that their allegations are prompted by their "disappointment" relating to "Morris' resignation" which was "a result of sexual assault allegations made public in the summer of 2024." Dkt. 9 at ¶ 34. It was these allegations—not the alleged financial misallocation discovered by the unnamed CPA—that triggered Plaintiffs' request for a refund. *See id.* The only discovery which Plaintiffs allege is the discovery that Morris was not authorized to return tithed funds. The Court should dismiss the unrelated, ten-year-old allegations of fraudulent misallocation. *See Cypress Home Care, Inc.*, 2020 WL 10317441, at *5 (dismissing fraud claim when plaintiff failed to "allege that it was unaware of the ongoing harms the representations caused.").

III.    **Plaintiffs' breach of contract allegations fail to state a viable claim.**

A.    **Plaintiffs have not pled an enforceable contract.**

The Court should also dismiss the breach of contract claims because Plaintiffs failed to plead facts plausibly supporting the elements of their claims, which requires showing that: "(1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach." *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). To establish a valid contract, Plaintiffs must show: "(1) an offer, (2) acceptance of the offer, (3) mutual assent or 'meeting of the minds' about the subject matter and the essential terms of the contract, and (4) consideration or mutuality of obligations." *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831, 846 (S.D. Tex. 2011). Texas courts consider these elements under "the objective standard of what the parties said and how they acted, not on their subjective state of mind." *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 589 (Tex. App.—Austin 2007, pet. denied).

Neither the Allocation Statements nor the Money Back Statements establish an enforceable contract. *See* Dkt. 9 at ¶¶ 75, 78.

1.    **Plaintiffs' contract claim based on the alleged Allocation Statements fails for lack of consideration.**

As already explained, a conditioned gift to a charitable organization typically creates a trust under which the charitable organization acts as trustee to administer the gift in a manner consistent with the conditions stated in the gift instrument. *See Eshelman*, 655 S.W.3d at 499 n.2 (explaining that a "public charity" is a "'charitable trust,' as is any gift to it."). However, Plaintiffs failed to

plead any facts suggesting that they conditioned their gifts—even though the option was available to them—in a manner that would cause Gateway to become a trustee with limited rights over the gifted funds. *See* Section II.B.1., *supra*. Thus, Plaintiffs have not pled that Gateway surrendered any right in the tithing transactions as required to transform the donation into an enforceable contract. RESTATEMENT (SECOND) OF CONTRACTS § 76 cmt. d (1981) ("Words of promise do not constitute a promise if they make performance entirely optional with the purported promisor."); *see also Eshelman*, 655 S.W.3d at 500 (holding that a plaintiff lacked standing to bring a breach of contract claim against a charitable organization when the plaintiff failed to demonstrate that he conditioned his donation to the organization).

### 2.    Plaintiffs fail to show that the Money Back Statements constituted an offer or were supported by consideration.

**No offer.** The Money Back Statements do not qualify as an actionable offer because Morris' statements do not include enforceable contractual terms. "To prove that an offer was made, a party must show (1) the offeror intended to make an offer, (2) the terms of the offer were clear and definite, and (3) the offeror communicated the essential terms of the offer to the offeree." *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied).

Plaintiffs' allegations contain no essential contract terms. They cite Morris' promise that "If you'll try it for one year—if you are not fully satisfied—at the end of that year, I'll give you your money back." *See* Dkt. 9 at ¶ 37. But neither Morris' statement nor Plaintiffs' allegations ever explain what "it" is. This offer does not explain how much donors must give. *See supra*, Merriam-Webster's Collegiate Dictionary at 1312. Nor is it clear, assuming "it" refers to a 10% tithe, whether the giver must calculate ten percent from their pre- or post-tax income. Indeed, the

statement does not even include the term "tithe," raising further questions whether any gift to Gateway would satisfy the alleged terms of Morris' offer.

Nor do Plaintiffs explain the conditional statement "try it for one year." Morris did not define the regularity with which Plaintiffs were required to give during that year or otherwise explain what constitutes "try[ing] it" to meet the terms of this purported offer. A statement raising so many questions as to its meaning cannot constitute a valid contractual offer because the terms of the offer are not clear and definite. *See Alexam, Inc. v. Best Buy Stores L.P.*, 2013 WL 1795956, at *4 (E.D. Tex. Apr. 10, 2013), *R&R adopted sub nom. Alexam, Inc. v. Best Buy Stores LP*, 2013 WL 1789573 (E.D. Tex. Apr. 26, 2013) ("The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance." (quoting RESTATEMENT (SECOND) OF CONTRACTS § 33(3) (1981)). Even if the encouragement to "try it for one year" was clear and definite, that oral statement would not be an enforceable term because Texas law requires that agreements "not to be performed within one year of the date" of the agreement must be in writing. TEX. BUS. & COMM. CODE §§ 26.01(a), (b)(6).

**No consideration.** Plaintiffs also fail to allege that this agreement was supported by consideration. Plaintiffs' tithes to Gateway were gifts. "[A] gift is not ordinarily treated as a bargain, and a promise to make a gift is not made a bargain by the promise of the prospective donee to accept the gift, or by his acceptance of part of it." RESTATEMENT (SECOND) OF CONTRACTS § 71 cmt. c (1981). Even if Morris' promise to only accept the gift if givers were completely satisfied was a condition placed upon Gateway's acceptance, such a promise was illusory. As already explained, both Gateway's website and its bylaws make clear that it was not able to return gifts. *See*

Section II.B.2., *supra*. Plaintiffs pled no other conditions or waiver of rights by Gateway that would serve as consideration for the money back guarantee. As a result, the Money Back Statements do not establish an enforceable contract because they are not supported by consideration.

Because the Plaintiffs have failed to plead an enforceable contractual term under either statement, the Court should dismiss. *See Marsh v. Lottery.com, Inc.*, 2024 WL 4327461, at *8 (W.D. Tex. Aug. 28, 2024) (dismissing breach of contract claim for failure to plead an enforceable contract).

### B.    Plaintiffs' claim of conspiracy to breach a contract is not cognizable under Texas law.

Under Claim Two, Plaintiffs allege "Breach of Contract and Conspiracy to Breach Contract." Dkt. 9 at 14. At minimum, Plaintiff's conspiracy claim must be dismissed because "a conspiracy to breach a contract is not actionable under Texas law." *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003); *see also Williams v. Fed. Nat'l Mortg. Ass'n*, 2012 WL 443986, at *4 (N.D. Tex. Feb. 13, 2012) (dismissing a civil conspiracy claim when the only other remaining claim was for breach of contract).

### C.    Plaintiffs have not pled conduct relating to the Allocation Statements within the relevant statute of limitations.

Plaintiffs' breach of contract claims based on the Allocation Statements suffer the same limitations problems as their fraud claims and should be dismissed for the same reasons. In Texas, contract claims, except for contracts for real property, "must be brought not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.051. "[A] cause of action for breach of contract accrues at the moment the contract is breached." *Sheet Pile, L.L.C. v. Plymouth Tube Co., USA*, 98 F.4th 161, 166 (5th Cir. 2024) (quoting *Archer v. Tregellas*, 566 S.W.3d 281, 288 (Tex. 2018)). As discussed above, the only conduct Plaintiffs allege relating to the

Allocation Statements occurred at least ten years ago—long before the applicable four-year limitations period. *See* Section II.C., *supra*.

Plaintiffs cannot escape dismissal under the discovery rule. The Fifth Circuit recently held that it is difficult for plaintiffs to "surpass Texas's high bar for deferral under the discovery rule" in the breach-of-contract context. *Sheet Pile, L.L.C.*, 98 F.4th at 167. In *Sheet Pile*, the Fifth Circuit explained that Texas's due-diligence standard "'requires that [a contracting party] protect its own interests' by, for example, 'asking [its] contract partner for information needed to verify contractual performance.'" *Id.* (quoting *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006)) (second alteration in original). Here, Plaintiffs easily could have sought to verify Gateway's tithing allocations long ago or could have consulted with the unnamed CPA who claims to have found account discrepancies in 2013. But they did not. Because the alleged conduct occurred more than four years ago and the discovery rule does not protect Plaintiffs' claims, the Court should dismiss them as time barred. *See* TEX. CIV. PRAC. & REM. CODE § 16.051.

## CONCLUSION AND PRAYER

Gateway respectfully requests that this Court grant its Motion and dismiss all claims asserted against it in Plaintiffs' Amended Class Action Complaint (Dkt. 9). Gateway also requests that this Court grant any other relief to which it may be justly entitled.

Respectfully submitted,

*/s/ Ronald W. Breaux*

Ronald W. Breaux
   Texas Bar No. 02937200
   Ron.Breaux@haynesboone.com
Bradley W. Foster
   Texas Bar No. 07283200
   Brad.Foster@haynesboone.com
Taryn M. McDonald
   Texas Bar No. 24088014
   Taryn.McDonald@haynesboone.com
Ryan Paulsen
   Texas Bar No. 24060397
   Ryan.Paulsen@haynesboone.com
Justin W. Manchester
   Texas Bar No. 24126965
   Justin.Manchester@haynesboone.com
**HAYNES AND BOONE, LLP**
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
214.651.5000 (phone)
214.651.5940 (fax)
-
Wendi L. Hodges
   Texas Bar No. 24045096
   Wendi@thechurchlawyers.com
Alison R. Haefner
   Texas Bar No. 24107796
   Ally@thechurchlawyers.com
**MIDDLEBROOK | GROUP, PLLC**
611 S. Main Street, Suite 500
Grapevine, Texas 76051
817.484.0214 (phone)
817.484.0194 (fax)
-
Shari D. Goggin
   Federal Bar No. 3169653
   sgoggin@rlattorneys.com
**RESNICK & LOUIS, P.C.**
1512 Center Street, Suite 100
Houston, Texas 77007
281.962.3676 (phone)

**COUNSEL FOR GATEWAY CHURCH**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record on November 25, 2024, pursuant to the Court's ECF filing system and the Federal Rules of Civil Procedure.

*/s/ Ronald W. Breaux*
Ronald W. Breaux
