# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KATHERINE LEACH, GARRY K. LEACH, MARK BROWDER, TERRI BROWDER, on behalf of themselves and those Similarly situation, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:24-cv-000885-ALM |
| GATEWAY CHURCH, ROBERT MORRIS, THOMAS M. LANE, KEVIN L. GROVE, STEVE DULIN, | § § § § § | |
| Defendants. | § § | |

**DECLARATION OF JOHN D. WILLBANKS III**

I, John D. Willbanks III (Tra), with the relevant address of 500 S. Nolen Dr., Suite 300, Southlake, TX 76092, declare as follows:

1. I am over the age of 21 years, of sound mind, and legally competent to make this declaration. I have personal knowledge of and am familiar with the matters set forth in this declaration, and the facts and statements contained herein are true and correct.

2. I am a member of the Board of Elders of Gateway Church. In that role, I was a member of the body that adopted the Amended and Restated Bylaws of Gateway Church.

3. I am familiar with the document attached hereto as Exhibit 1, and testify that it is a true and correct copy of the Amended and Restated Bylaws of Gateway Church.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 25, 2024.

_____
John D. Willbanks III (Tra)

# Exhibit 1

**Declaration of John D. Willbanks III**

# AMENDED AND RESTATED BYLAWS
# OF GATEWAY CHURCH

These Bylaws govern the affairs of Gateway Church, a Texas nonprofit religious corporation (also, the "Church"). The Church is organized under Title 2, Chapter 22 of the Texas Business Organizations Code (hereinafter, the "Code").

## ARTICLE 1
## STATEMENT OF FAITH

**1.01   The Trinity.**  It is the testimony of both Testaments and of the Christian Church that God is both One and Triune.  The Biblical revelation testifies that there is only one God, and that He is eternally existent in Three Persons: Father, Son, and Holy Spirit.

   **(a)   God the Father.**  God the Father is the Creator and sustainer of all things, who created the universe in love to respond to Himself.  He created man in His own image for fellowship, and calls man back to Himself through Christ after the rebellion and fall of man.

   **(b)   The Son.**  Jesus Christ is eternally God.  He was together with the Father and the Holy Spirit from the beginning, and through him all things were made.  For man's redemption He left heaven and became incarnate by the Holy Spirit of the Virgin Mary.

   **(c)   The Holy Spirit.**  The Holy Spirit is God, the Lord and giver of life, who was active in the Old Testament, and given to the Church in fullness at Pentecost.  He empowers the saints for service and witness, cleanses man from the old nature, and conforms us to the image of Christ.  The baptism of the Holy Spirit, subsequent to conversion, releases the fullness of the Spirit and is evidenced by tongues, joy, praise, and other inward and outward manifestations and gifts.

**1.02   The Scripture.**  We affirm that the Bible containing the Old and New Testaments is alone the only infallible inspired Word of God, and that its authority is ultimate and final and eternal.  It cannot be added to, subtracted from, or superseded in any regard.  The Bible is the source of all doctrine, instruction, correction and reproof.  It contains all that is needed for guidance in godliness and practical Christian conduct.

**1.03   The Atonement.**  Christ's vicarious death on the cross paid the penalty for the sins of the whole world, but its benefits are only applicable to those who receive Jesus as their personal Savior.  Healing of the body, soul and spirit, is provided for in the atonement, as well as, all of God's provision for His saints, but these must be appropriated.

**1.04   Salvation.** The Word of God declares clearly that salvation is a free gift of God, based on the merits of the death of His Son, and is appropriated by faith.  Salvation is affected by personal repentance, belief on the Lord Jesus (justification), and personal acceptance of Him into one's life as Lord and Savior (regeneration).  The new life in Christ includes the privileges of adoption and inheritance in the Kingdom of God's beloved Son.  Salvation is an

act of free will in response to God's personal love for mankind.  It is predestined only in the sense that God, through His omniscience, foreknew those who would choose Him.  It is secure in the eternal unchanging commitment of God, who does not lie and is forever the same.  Salvation should produce an active lifestyle of loving obedience and service to Jesus Christ our Savior.

**1.05    The Christian Life.**  We believe that the Scriptures portray the life of the saint in this world to be one of balance between what is imputed to us as Christians and what is imparted to us according to our faith and maturity.  Hence God's provision for His children is total and the promises are final and are forever.  The shortcomings of the individual and of the Church are because of the still progressing sanctification of the saints.  The Christian life is filled with trials, tests, and warfare against a spiritual enemy.  For those abiding in Christ until their death or His return, the promises of eternal blessing in the presence of God are assured.  To remain faithful through all circumstances of life, it requires dependence upon the Holy Spirit and a willingness to die to personal desires and passions.

**1.06    The Church.**

    **(a)**    The goal of the Church is to make disciples of all nations and to present the saints complete in Christ.

    **(b)**    The Church is governed by the five-fold ministry as outlined in Ephesians 4: 11-12, the office of Elder, as well as other offices mentioned in Scripture.

    **(c)**    Church policy is governed by Eldership authority, emphasizing the final authority of the Church Eldership.

    **(d)**    It is essential to the life of-the Church that scriptural patterns of discipline be practiced and that oversight for Church discipline, individual and corporate, be exercised by the leadership of the Church.

**1.07    Water Baptism and the Lord's Supper.**  The Word of God enjoins on the Church two perpetual ordinances of the Lord Jesus Christ.  The first, baptism, is the outward sign of what God has already done in the individual's life, and is a testimony to all that the person belongs now to Jesus.  Water baptism allows believers to identify with Jesus and is performed in the name of the Father, the Son, and the Holy Spirit.  The Lord's Supper is a commemoration of the death of the Lord and is done in remembrance of Him until He comes again, and is a sign of our participation in Him.  Both institutions are restricted to those who are believers.

**1.08    Eschatology.**  We affirm the bodily, personal, second coming of the Lord Jesus Christ, the resurrection of the Saints, the Millennium, and the final judgment.  The final judgment will determine the eternal status of both the saints and the unbelievers, determined by their relationship to Jesus Christ. We affirm with the Bible the final state of the New Heavens and New Earth.

**1.09  Statement of Marriage.**  We affirm there are two sexes as created by God - male and female (Gen. 1 - 2), and that marriage is a sacred institution exclusively between one man and one woman (Matt. 19:4-6).

**1.10  Use of Church Facilities.**  This Church specifically prohibits acts or omissions, including but not limited to, permitting any Church assets or property, whether real property, personal property, intangible property, or any property or asset of any kind that is subject to the direction or control of the Church, to be used in any manner that would be or could be perceived by any person to be inconsistent with the Church's Statement of Faith.

**1.11  Common Law Marriage Policy.**  In no case shall persons be accepted into Church membership and/or Church employment that are known to be living in: (1) a common-law state of matrimony; or (ii) a manner inconsistent with the Church's teaching on marriage or sexuality pursuant to these Bylaws.

**1.12  Sexuality Policy.**  Sexuality and the divinely prescribed boundaries for the expression thereof is covered clearly in the Holy Scriptures, which limit sexual expression to the marital relationship of one (1) man with one (1) woman.  Homosexual acts, adultery, bestiality, and all forms of fornication are categorically condemned in the Holy Scriptures. *See 1 Corinthians 6:18; 1 Thes. 4:3; Rom. 1:26-27; Prov. 5:3-4, 8-13; 7:21-27; Gal. 5:19; Exodus 20:14; Deut. 5:18; Matt. 5:27; 19:18; Luke 18:20; Rom. 13:9; James 2:11; Lev. 20:10-21; 1 Cor. 6:18; 10:8; and Jude 7*.  Furthermore, the Church believes that sexuality is assigned by God at birth, whatever that may be, and the Holy Scripture does not permit an individual to alter their sexual identity physically or otherwise.  *See Deut. 23:1*.

**1.13  Bathroom Policy.**  Consistent with the Church's sincerely held religious beliefs, gender-specific bathroom facilities may only be utilized consistent with the gender assigned at birth and not gender identity or expression.  Optional family (non-gender specific) bathrooms may also be made available.

## ARTICLE 2
## AUTONOMY

The Church is autonomous and maintains the right to govern its own affairs, independent of any denominational control.  Recognizing, however, the benefits of cooperation with other churches in world missions and otherwise, this Church may voluntarily affiliate with any churches (Christian churches and ministries) of like precious faith.

## ARTICLE 3
## OFFICES

**3.01  Ministry Headquarters.**  The principal office of the Church (hereinafter referred to as the "Ministry Headquarters") in the State of Texas shall be located at 500 S. Nolen, Suite 300, Southlake, Texas 76092.  The Church may have such other offices, either in Texas or elsewhere, as the Board of Directors (hereinafter referred to as the "Board of Elders") may

determine. The Board of Elders has the full power and authority to change the location of any office of the Church.

**3.02  Registered Office and Registered Agent.**  The Church shall comply with the requirements of the Code and maintain a registered office and registered agent in Texas. The registered office may, but need not, be identical with the Church's principal office in Texas. The Board of Elders may change the registered office and the registered agent as provided in the Code.

## ARTICLE 4
## NONPROFIT PURPOSES

The Church is formed for any lawful purpose or purposes not expressly prohibited under Title 1, Chapter 2, or Title 2, Chapter 22 of the Code, including any purpose described by Section 2.002 of the Code. The Church is organized and shall be operated exclusively for religious, charitable and educational purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986, as amended. Notwithstanding the foregoing, the Church's purposes also include the limited participation of the Church in any other activities, including taxable activities, but only to the extent the activities would be permitted by a tax-exempt organization. More particularly, but without limitation, the purposes of this Church are:

**(a)**  To promote the Christian religion by any appropriate form of expression, within any available medium, and in any location, through the Church's combined or separate formation, of a church, ministry, charity, school, or eleemosynary institution, without limitation.

**(b)**  To exist as an independent Christian church, founded upon the faith and practices of the church as it is found in the New Testament.

**(c)**  To ordain Elders, license and employ ministers of the Gospel, and others, to conduct and carry on divine services at the place of worship of the Church, and elsewhere.

**(d)**  To collect and disburse any and all necessary funds for the maintenance of said Church and the accomplishment of its purpose within the State of Texas and elsewhere.

**(e)**  To make distributions to organizations that qualify as exempt organizations under Section 501(c)(3) of the Internal Revenue Code of 1986 as amended.

**(f)**  To promote, encourage, and foster any other similar religious, charitable and educational activities; to accept, hold, invest, reinvest and administer any gifts, legacies, bequests, devises, funds and property of any sort or nature, and to use, expend, or donate the income or principal thereof for, and to devote the same to, the foregoing purposes of the Church; and to do any and all lawful acts and things which may be necessary, useful, suitable, or proper for the furtherance of accomplishment of the purposes of this Church. Provided,

however, no act may be performed which would violate Section 501(c)(3) of the Internal Revenue Code of 1986, as it now exists or as it may hereafter be amended.

# ARTICLE 5
## POWERS AND RESTRICTIONS

Except as otherwise provided in the Certificate of Formation, as amended, and these Bylaws and in order to carry out the above-stated purposes, the Church shall have all those powers set forth in the Code, as it now exists or as it may hereafter be amended. Moreover, the Church shall have all implied powers necessary and proper to carry out its express powers. The powers of the Church to promote the purposes set out above are limited and restricted in the following manner:

**(a)** The Church shall not pay dividends and no part of the net earnings of the Church shall inure to the benefit of or be distributable to its organizers, officers or other private persons, except that the Church shall be authorized and empowered to make payments and distributions (including reasonable compensation for services rendered to or for the Church) in furtherance of its purposes as set forth in the Certificate of Formation or these Bylaws. No substantial part of the activities of the Church shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the Church shall not participate in, or intervene in (including the publication or distribution of statements) any political campaign on behalf of any candidate for public office. Notwithstanding any other provisions of the Certificate of Formation or these Bylaws, the Church shall not carry on any other activities not permitted to be carried on by: (i) a corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws; or (ii) a corporation, contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws.

**(b)** In the event this Church is in any one (1) year a "private foundation" as defined by Section 509(a) of the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws, it shall be required to distribute its income for such taxable year at such time and in such manner as not to subject the foundation to taxation under Section 4942 of the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws; and further shall be prohibited from: (i) any act of "self-dealing" as defined in Section 4941(d) of the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws; (ii) retaining any "excess business holdings" as defined by Section 4943(c) of the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws; (iii) making any investments in such manner as to subject the foundation to taxation under Section 4944 of the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws; or (iv) making taxable expenditures as defined in Section 4945(d) of the Internal Revenue Code of 1986, as amended, or corresponding provisions of any subsequent federal tax laws.

**(c)** The Church shall not accept any gift or grant if the gift or grant contains major conditions which would restrict or violate any of the Church's religious, charitable, or educational purposes or if the gift or grant would require serving a private as opposed to a public interest.

## ARTICLE 6
## MEMBERSHIP

**6.01 Members.** As set forth in Article 7, the corporate governance of the Church is solely vested in the Board of Elders. The Church shall not have any corporate voting members within the meaning of the Code or any other applicable statute. The Church may from time to time use the term "member" to refer to persons associated with it, as provided for herein. Such persons shall not be corporate members within the meaning of the Code or any other applicable statute. As such, members are not entitled to cast a vote in person, by proxy, or otherwise that is binding upon the Church.

**6.02 Eligibility.** Any person who believes in and has accepted the Lord Jesus Christ as his personal Savior, who is endeavoring to follow Him in his daily life, and who subscribes substantially to the Statement of Faith and satisfies the requirements for membership outlined in Article 6.03 shall be eligible for membership.

**6.03 Requirements for Membership Recognition.**

**(a)** A personal commitment to the Lordship of Jesus Christ in their life.

**(b)** Substantial agreement with the Statement of Faith of Gateway Church.

**(c)** Submission to the decisions, vision, and direction established by the Board of Elders of Gateway Church. The member must be committed to working out problems or disagreements through communication and love. The member must accept and support the decisions of the Board of Elders when the disagreement deals with questions that are not sin or violations of the law.

**(d)** Completion of the New Membership Classes (currently known as Growth Path), in good standing.

**(e)** Financially supportive of the Church and its ministries.

**(f)** Spiritually supportive of the vision and ministries of the Church.

**(g)** Execution of a membership agreement includes an agreement to participate in mandatory Christian Arbitration as described in Article 18.05 of these Bylaws.

**6.04 Application for Membership.** Admission to membership in the Church shall be initiated by the person desiring membership. Application for membership shall be made on the forms provided by the Church.

**6.05  Review of Membership**.  The Church staff may periodically review the membership roll.  Members who no longer meet the requirements for membership as outlined in Article 6.03 may be purged from the member roll after an affirmative vote by the Board of Elders.

**6.06  Privileges of Membership.**  The member has the privilege of being associated with this work of God and the ministries of the Church.  As a member of Gateway Church, the Church provides a spiritual covering for the member.  In addition, the member has the benefit of growing in their faith through serving in the Church.

**6.07  Termination of Membership.**  Termination of membership shall be accomplished in one (1) of the following ways:

    **(a)**  At the member's request;

    **(b)**  By transfer of membership to another church;

    **(c)**  By determination of the Board of Elders for good and sufficient cause;

    **(d)**  By failure to continue to meet the requirements of Membership outlined in Article 6.03; or

    **(e)**  By death.

**6.08  Resolving Membership Disputes.**  In any dispute between members and the Church leadership related to Church activities and Church administration, all parties involved will cooperate in good faith to resolve the dispute.  The process for resolving disputes within the membership is set forth in Article 18.05 of these Bylaws.

## ARTICLE 7
## ELDERS

**7.01  Management.**  Power to manage and govern the affairs of the Church is vested in the Board of Elders of the Church (hereinafter, the "Board of Elders").  The term "Board of Elders" shall mean, and is the functional equivalent of, the board of directors as required by the Code.

**7.02  Number of Elders.**  The Board of Elders shall consist of the Senior Pastor, who shall serve as a non-voting member, and such number of additional Elders as may from time to time be nominated and elected in accordance with these Bylaws, provided that the total number of Elders shall not be less than three (3) or more than fifteen (15)  The decrease in the number of Elders shall not have the effect of shortening the term of any incumbent Elder.

**7.03  Term of Elders.**  Subject to the provisions of these Bylaws, Elders may serve for as long as they are active in fulfilling their Elder responsibilities and as long as they continue to fulfill the qualifications for an Elder as outlined in 1 Timothy 3 and Titus 1.

**7.04   Qualification.**  All Elders shall be natural persons and current and active members of the Church.  Members of the Board of Elders shall be men who meet the scriptural qualifications outlined in 1 Timothy 3 and Titus 1.  They shall have been members of Gateway Church for a time determined by the Elder Board to be sufficient to know and understand the Church vision and to be known within the Church leadership.  Current staff members may not serve as Elders.

**7.05   Nomination and Election of Elders.**  Only Elders may nominate persons to serve on the Board of Elders.  A person who meets the qualification requirements to be an Elder, as set forth in Article 7.04, and who has been duly nominated may be elected as an Elder.  Elders shall be elected by the unanimous vote of the then-existing Board of Elders at any regular or special meeting.

**7.06   Ordination.**  Individuals who have been selected to be an Elder and have accepted such position shall be ordained to Elder service.  Depending on the specific function or ministry of the individual, the actual designation may be pastor, evangelist, *etc.*, but even such designation includes in itself ordination to the Eldership.  In the case of a person not having a specific designation, the ordination is simply to Elder service in general.

**7.07   Vacancies.**  Vacancies on the Board of Elders shall exist upon: (a) the death, leave of absence, resignation, or removal of any Elder; (b) an increase in the authorized number of Elders; or (c) the failure of the Elders to elect the full authorized number of Elders to be voted for at any annual, regular, or special meeting of the Board of Elders at which any Elder is to be elected.

The Board of Elders may declare the office of an Elder vacant if a court adjudges the Elder incompetent, is convicted of a crime involving moral turpitude, or does not accept the office of Elder in writing or by attending a meeting of the Board of Elders within thirty (30) days' notice of election.

Any vacancy occurring in the Board of Elders, and any Elder position to be filled due to an increase in the number of Elders, shall be filled by the Board of Elders (subject, however, to the limitations set forth in the Code).  A vacancy is filled by the unanimous vote of the remaining Elders, even if it is less than a quorum of the Board of Elders, or if it is a sole remaining Elder.  Vacancies reducing the number of Elders to less than three (3) shall be filled before the transaction of any other business.

**7.08   Elder Leave of Absence.**  From time to time, it is necessary for an Elder to temporarily stand down from his Eldership responsibilities and take a leave of absence.  An Elder on a leave of absence shall not be considered in office for purposes of establishing a quorum.  (See Article 7.11 of these Bylaws.)

**(a)   Voluntary:** At any time, an Elder may request a Leave of Absence by applying to the Chairman of the Board of Elders in writing including the reasons for the request.  The length of leave shall not be less than sixty (60) days and not more than twelve (12) months.  The Board of Elders shall approve the application before it takes effect.

**7.14  Duties of Elders.**  Elders shall discharge their duties in good faith, with ordinary care, and in a manner they reasonably believe to be in the best interest of the Church in conformity with the Code.  In the discharge of any duty imposed or power conferred on Elders, they may in good faith rely on information, opinions, reports, or statements, including financial statements and other financial data, concerning the Church or another person that were prepared or presented by a variety of persons, including officers and employees of the Church, professional advisors or experts such as accountants or legal.  An Elder is not relying in good faith if the Elder has knowledge concerning a matter in question that renders reliance unwarranted.

Elders are not deemed to have the duties of trustees of a trust with respect to the Church or with respect to any property held or administered by the Church, including property that may be subject to restrictions imposed by the donor or transferor of the property.

**7.15  Delegation of Duties.**  The Board of Elders is entitled to select advisors and delegate duties and responsibilities to them, such as the full power and authority to purchase or otherwise acquire stocks, bonds, securities, and other assets on behalf of the Church; and to sell, transfer, or otherwise dispose of the Church's assets and properties at a time and for a consideration that the advisor deems appropriate.  The Elders have no personal liability for actions taken or omitted by the advisor if the Board of Elders acts in good faith and with ordinary care in selecting the advisor.  The Board of Elders may remove or replace the advisor, with or without cause.

**7.16  Conflicts or Transactions with Elders.**  Pursuant to the Code and the Conflict of Interest Policy set forth in Article 14 of these Bylaws, a contract or transaction between the Church and an Elder of the Church is not automatically void or voidable simply because the Elder has a financial interest in the contract or transaction.

**7.17  Actions of Board of Elders.**  While it is the expressed desire of the Elders to operate in unity, all actions by the Board of Elders shall be <u>a majority</u> vote of the Elders present and voting at a meeting at which a quorum is present, unless a unanimous vote is required or a lesser number is sufficient according to these Bylaws.  An Elder who is present at a meeting and abstains from a vote is considered to be present for the purpose of quorum and his vote is considered neutral in determining the decision of the Board of Elders.  Voting shall be by a show of hands unless otherwise resolved by resolution.

**7.18  No Proxies.**  Voting by proxy is prohibited.

**7.19  No Compensation.**  Elders, including the Senior Pastor, shall not receive salaries or compensation for their services to the Board of Elders.  An Elder may serve the Church in any other capacity, employment or otherwise, and receive reasonable compensation for those services.

**7.20  Removal of Elders other than the Senior Pastor.**  The Board of Elders may vote to remove an Elder, other than the Senior Pastor, at any time, with or without cause by a

majority of the Elders. A meeting to consider the removal of an Elder may be called and noticed following the procedures provided in these Bylaws and such notice shall also state that the issue triggering the possibility of removal shall be placed upon the agenda. An affirmative vote of the majority of the Board of Elders to remove an Elder shall constitute the Board's decision of removal. The Senior Pastor may be removed in accordance with Section 9.05 herein.

**7.21   Resignation of Elders.**  An Elder may resign at any time by giving written notice to the Board of Elders or the Senior Pastor. Such resignation shall take effect on the date of the receipt of such notice, or at any later time specified therein; and, unless otherwise specified therein, the written acceptance of such resignation shall not be necessary to make it effective.

**7.22   Church Questions.**  In any case where a question arises regarding ecclesiastical polity, Christian doctrine, membership discipline, questions of Church property, or with respect to any other matter that shall arise concerning the Church, its internal workings, and its governance by any member, congregant, visitor or other person who is ministered to during religious services held by the Church, or at other times, the Board of Elders shall decide such question by majority vote.

**7.23   Church Disruptions.**  Any person deemed by the Board of Elders to: (a) be in substantial disagreement with the doctrine and interpretation of the Holy Bible espoused by the Church; or (b) pose a physical or psychological threat to any person or to the Church; or (c) be causing, about to cause, or capable of causing disruption to the religious services and activities of the Church shall be considered a trespasser on Church property and may be ejected summarily. No Elder shall incur any liability for acting in good faith in the interests of the Church pursuant to this Article 7.23.

**7.24   Deadlock.**  In the case where the Board of Elders shall, by reason of deadlock (whether because an even number of Elders is seated on the Board of Elders, or because certain Elders are absent even though a quorum is present, or because of abstention, or for any other reason), be unable to reach a conclusive vote on any issue before the Board of Elders, then, in such instance, the Chairman of the Board or his appointee, shall cast an additional ballot which shall be known as the "majority ballot", so that an official act or decision may be taken by the Board of Elders. The majority ballot shall be cast in addition to the regular Elder's vote cast by the Chairman of the Board.

**7.25   Elder Disputes.**  In any dispute arising between members of the Board of Elders, all parties involved agree to cooperate in good faith to resolve the dispute. An affirmative vote of the majority of the Board of Elders shall decide the resolution of the dispute.

## ARTICLE 8
## CORPORATE OFFICERS

**8.01   Officer Positions.**  The hierarchy of the Church's corporate officers shall be: Chairman of the Board of Elders, President, Secretary, and Treasurer. The Board of Elders may create additional officer positions, define the authority and duties of each such position,

and elect or appoint persons to fill the positions as needed.  The same person may hold any two (2) or more offices except for the offices of President and Secretary or President and Treasurer.

**8.02    General Duties.** All officers and agents of the Church, as between themselves and the Church, shall have such authority, perform such duties, and manage the Church as may be provided in these Bylaws or as may be determined by resolution of the Board of Elders not inconsistent with these Bylaws.

**8.03    Election and Term of Office.** The Board of Elders shall elect the officers of the Church at the annual, regular, or special meeting of the Board.  The term of office of all officers shall be one (1) year; however, such officers may serve consecutive terms without limitation.

**8.04    Chairman of the Board of Elders.**  The Chairman will oversee the Church's operations and business plans, evaluate performance, and supervise the management of the Church.  The Chairman shall be vested with all authority necessary to perform his duties according to his contract of employment, and as determined by resolution of the Board of Elders and consistent with these Bylaws.

**8.05    President.** The President shall supervise and control all of the day-to-day business operations and affairs of the Church.  The President may execute any deeds, mortgages, bonds, contracts, or other instruments on behalf of the Church.  However, the President may not execute instruments on behalf of the Church, without first obtaining approval of the Board of Elders, if:

**(a)**    The amount of the transaction is above any sum stated in these Bylaws or as directed by the Board of Elders;

**(b)**    The instrument has the effect of seeking to wind-down or terminate or dissolve the Church, place the Church into receivership or bankruptcy, to confess a judgment of liability on behalf of the Church, to dispose of assets of the Church that equates to a wind-down or dissolution;

**(c)**    The instrument is related to any acquisition or sale of real property;

**(d)**    It is a transaction that involves a conflict of interest related to or involving the President;

**(e)**    It involves indemnification of any officer or Elder; and

**(f)**    It is a transaction otherwise reserved to the Board of Elders under these Bylaws.

**8.06    Secretary.** The Secretary shall: (a) give all notices as provided in the Bylaws or as required by law; (b) take minutes of the meetings of the members and of the Board of Elders