IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| KATHERINE LEACH, GARRY K. LEACH, MARK BROWDER, TERRI BROWDER, on behalf of themselves and those Similarly situation, | § § § § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| v. | | Civil Action No. 4:24-cv-000885-ALM |
| GATEWAY CHURCH, ROBERT MORRIS, THOMAS M. LANE, KEVIN L. GROVE, STEVE DULIN, | | |
| Defendants. | | |

**GATEWAY CHURCH'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM**

Ronald W. Breaux
   Texas Bar No. 02937200
   Ron.Breaux@haynesboone.com
Bradley W. Foster
   Texas Bar No. 07283200
   Brad.Foster@haynesboone.com
Taryn M. McDonald
   Texas Bar No. 24088014
   Taryn.McDonald@haynesboone.com
Ryan Paulsen
   Texas Bar No. 24060397
   Ryan.Paulsen@haynesboone.com
Justin W. Manchester
   Texas Bar No. 24126965
   Justin.Manchester@haynesboone.com
**HAYNES AND BOONE, LLP**
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
214.651.5000 (phone)
214.651.5940 (fax)

Wendi L. Hodges
   Texas Bar No. 24045096
   Wendi@thechurchlawyers.com
Alison R. Haefner
   Texas Bar No. 24107796
   Ally@thechurchlawyers.com
**MIDDLEBROOK | GROUP, PLLC**
611 S. Main Street, Suite 500
Grapevine, Texas 76051
817.484.0214 (phone)
817.484.0194 (fax)

Shari D. Goggin
   Federal Bar No. 3169653
   sgoggin@rlattorneys.com
**RESNICK & LOUIS, P.C.**
1512 Center Street, Suite 100
Houston, Texas 77007
281.962.3676 (phone)

**COUNSEL FOR GATEWAY CHURCH**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ..........................................................................................................ii

ARGUMENTS AND AUTHORITIES ........................................................................................... 1

    I.     Plaintiffs cannot solve the intractable jurisdictional defects in their Complaint. ................ 1

          A.     The donor information and Gateway Bylaws are properly before the Court. ......... 1

          B.     The home state exception applies to divest this Court of jurisdiction now. ........... 2

          C.     Neutral principles cannot resolve Plaintiffs' claims, which require ecclesiastical abstention. .......................................................................................... 4

    II.    Plaintiffs' mere recitation of the elements of their fraud claims fails to satisfy the requirements of Rules 9(b) and 12(b)(6). ............................................................................. 6

          A.     The fraud claims lack the particularity required to survive dismissal. .................... 6

          B.     Plaintiffs cannot vaguely assert the discovery rule to salvage time-barred claims. ....................................................................................................................... 7

    III.   Plaintiffs' breach of contract claims fail as a matter of law. ................................................ 8

    IV.   The Court should deny Plaintiffs' meritless ancillary requests. .......................................... 9

CONCLUSION AND PRAYER .................................................................................................... 10

CERTIFICATE OF SERVICE ...................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*ABC Arbitrage Plaintiffs Group v. Tchuruk*,
   291 F.3d 336 (5th Cir. 2002) ................................................................................................6

*Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*,
   29 F.4th 226 (5th Cir. 2022) ................................................................................................10

*Davis v. Meta Platforms, Inc.*,
   2023 WL 4670491 (E.D. Tex. July 20, 2023) ......................................................................1

*In re Diocese of Lubbock*,
   624 S.W.3d 506 (Tex. 2021) .............................................................................................4, 5

*Dragoslavic v. Ace Hardware Corp.*,
   274 F. Supp. 3d 578 (E.D. Tex. 2017) ..................................................................................6

*Eshelman v. True the Vote, Inc.*,
   655 S.W.3d 493 (Tex. App.—Houston [14th Dist.] 2022, no pet.) ......................................9

*Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-day Saints*,
   665 F. Supp. 3d 1263 (D. Utah 2023) ...............................................................................5, 6

*Hackett v. Hous. Auth. of City of San Antonio*,
   750 F.2d 1308 (5th Cir. 1985)...............................................................................................1

*Hill v. Estate of Hill*,
   594 F. Supp. 3d 741 (N.D. Tex. 2022) ...............................................................................10

*Huntsman v. Corp. of the President of the Church of Jesus Christ of Latter-day Saints*,
   76 F.4th 962 (9th Cir. 2023) .................................................................................................5

*Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*,
   331 F.3d 452 (5th Cir. 2003) ................................................................................................8

*Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.*,
   485 F.3d 804 (5th Cir. 2007) ................................................................................................3

*Roberts v. Davis*,
   2019 WL 3997366 (E.D. Tex. Aug. 23, 2019) ..................................................................10

*Safety Nat'l Cas. Corp. v. U.S. Dep't of Homeland Sec.*,
   2007 WL 7131004 (S.D. Tex. Oct. 22, 2007) ......................................................................1

*Sheet Pile, L.L.C. v. Plymouth Tube Co., USA*,
    98 F.4th 161 (5th Cir. 2024) ................................................................................................8

*Shell Oil Co. v. Ross*,
    356 S.W.3d 924 (Tex. 2011) ................................................................................................7

*Stewart v. Entergy Corp.*,
    35 F.4th 930 (5th Cir. 2022) ........................................................................................1, 3, 4

*Turnage v. Bailey*,
    2020 WL 2736424 (S.D. Miss. May 26, 2020), *aff'd in part and rev'd in part on
    other grounds*, 29 F.4th 232 (5th Cir. 2022) .......................................................................2

*Wagner & Brown, Ltd. v. Horwood*,
    58 S.W.3d 732 (Tex. 2001) ..................................................................................................7

*Woods v. William M. Mercer, Inc.*,
    769 S.W.2d 515 (Tex. 1988) ................................................................................................8

## Statutes

26 U.S.C. § 501 .............................................................................................................................9

Tex. Bus. & Com. Code § 26.01 ...................................................................................................9

Tex. Bus. Org. Code § 22.054 .......................................................................................................9

Tex. Civ. Prac. & Rem. Code § 16.004 .........................................................................................7

Tex. Civ. Prac. & Rem. Code § 16.051 .........................................................................................8

Tex. Prop. Code § 163.004 ............................................................................................................8

## Rules and Other Authorities

Fed. R. Evid. 1006 ........................................................................................................................2

Local Rule CV-7 ............................................................................................................................2

## ARGUMENTS AND AUTHORITIES

**I.      Plaintiffs cannot solve the intractable jurisdictional defects in their Complaint.**

This Court lacks jurisdiction over Plaintiffs' claims. Contrary to Plaintiffs' suggestions, it is never "premature" to address the Court's jurisdiction. *See* Dkt. 30 at 4. To the contrary, "[s]ubject-matter jurisdiction must be established as a threshold matter, inflexibly and without exception." *Davis v. Meta Platforms, Inc.*, 2023 WL 4670491, at *5 (E.D. Tex. July 20, 2023). The lack of jurisdiction over this case is a fundamental defect that must be addressed now. *See id*.

**A.      The donor information and Gateway Bylaws are properly before the Court.**

As an initial matter, Plaintiffs' request to strike or otherwise disregard the donor information, Gateway Bylaws, and other evidence outside the Complaint ignores controlling case law and should be denied. *See* Dkt. 30 at 4-5, 23-24. Under binding precedent, the Court may properly consider the donor information and Gateway Bylaws to resolve the Rule 12(b)(1) motion. *See* Dkt. 24 at 9. Plaintiffs do not contend otherwise but instead offer two narrow complaints that should be rejected.

*First*, Plaintiffs contend that the donor information should be stricken because Gateway did not attach the "documents" underlying the donor residency numbers. *See* Dkt. 30 at 4-5, 23. They cite two cases under Federal Rule of Evidence 1006, but neither applies here. *See Hackett v. Hous. Auth. of City of San Antonio*, 750 F.2d 1308, 1312-14 (5th Cir. 1985) (harmless error to admit chart summarizing disparate sources of data); *Safety Nat'l Cas. Corp. v. U.S. Dep't of Homeland Sec.*, 2007 WL 7131004, at *1-2 (S.D. Tex. Oct. 22, 2007) (admitting demonstrative charts under Rule 611). Plaintiffs' purported insistence on evidentiary rigor contradicts the focus on "practicality and reasonableness" at this stage of the proceedings. *See Stewart v. Entergy Corp.*, 35 F.4th 930, 933 (5th Cir. 2022); *infra* 2-3. Here, the chart conveys data directly received by the declarant from a

single source: Gateway's donation processing application. Dkt. 24-2 at ¶¶ 6-8. This is exactly the kind of "practical and reasonable" evidence relied on by courts to assess CAFA jurisdiction. *See, e.g.*, *Turnage v. Bailey*, 2020 WL 2736424, at *6-7 (S.D. Miss. May 26, 2020) (dismissing based on comptroller affidavit providing residency information for 213,334 class members), *aff'd in part and rev'd in part on other grounds*, 29 F.4th 232, 239 (5th Cir. 2022). To the extent this Court believes Rule 1006 applies, all the Rule requires is for Gateway to make any underlying data "available for examination or copying, or both . . . at a reasonable time and place" and produce them in court if so ordered. FED. R. EVID. 1006(b). Gateway does not object to doing so.

*Second*, Plaintiffs argue that the Gateway Bylaws attached to the Motion should be stricken because they were only a "partial copy." *See* Dkt. 30 at 24. Plaintiffs ignore Local Rule CV-7(b), which requires that "[o]nly relevant, cited-to excerpts of attached materials should be attached to the motion." L.R. CV-7(b). The rule also permits inclusion of "[t]he page preceding and following a highlighted or underlined page" to provide context. *Id*. Gateway cannot be punished for following the rule. *See* Dkt. 24-3. Plaintiffs' quibbles regarding the information in the supporting declaration are similarly meritless. Willbanks states that he is a member of the board of elders that adopted the bylaws, states his familiarity with the bylaws, and confirms that the attached bylaws are true and correct. *Id*. Nothing more is required, and Plaintiffs cite no authority stating otherwise.

    **B. The home state exception applies to divest this Court of jurisdiction now.**

Turning to the merits, Plaintiffs offer no affirmative arguments or evidence establishing jurisdiction. Nor do they dispute the first prong of the CAFA home state exception. As for the second, their only response is a legally unsupported request to wait until class certification, but there is no basis for delay. *See* Dkt. 30 at 5. That is because the CAFA home state exception is a

"preliminary question" courts must resolve at the outset of the case without "unduly delaying." *Preston v. Tenet Healthsys. Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 820 (5th Cir. 2007).

The only case Plaintiffs cite further supports ruling on the issue now. *See* Dkt. 30 at 5 (quoting *Stewart*, 35 F.4th at 932). In *Stewart*, the Court defined the class based on the plaintiffs' allegations and then, in contravention of Plaintiffs' request here, proceeded to assess the residency prong of the CAFA exceptions. *Id*. at 933. Focusing on the need for evidentiary "practicality and reasonableness" at the "preliminary stages of a class action," the court noted that district courts "may make a reasonable assumption of CAFA's citizenship requirement from evidence that indicates the probable citizenship of the proposed class" and may further engage in "a commonsense presumption" regarding citizenship where "the proposed class is discrete." *Id*. Acknowledging concerns regarding reliability and methodology, the Court nonetheless held that an "informal survey" of citizenship was enough to support a "reasonable assumption" that a class action arising out of a hurricane striking Louisiana "will consist overwhelmingly of Louisiana citizens and corporations." *Id*. at 934 (affirming remand to state court).

The Court should follow the same process to apply the home state exception here. As in *Stewart*, Plaintiffs' proposed class is not "fully defined" but is nonetheless discrete and reasonably ascertainable. *See* Dkt. 9 at ¶ 54. The donor information—taken directly from Gateway's donation processing application—is far more reliable than the "informal survey" in *Stewart*. *See* Dkt. 24-2 at ¶¶ 6-8. And it is certainly sufficient to support a "reasonable assumption" that the vast majority of potential class members are Texas residents, given that Gateway was founded in Southlake and 9 of its 11 campuses are in the Dallas-Fort Worth area. *See* Dkt. 24 at 3-4.

Grasping at straws, Plaintiffs contend that some donors may have left Texas since the time of their donation. *See* Dkt. 30 at 5. But Plaintiffs would need evidence of *thousands* of donors moving out of state to cross the statutory one-third threshold. That is anything but a "reasonable assumption." *See Stewart*, 35 F.4th at 933. There is neither need nor basis for further delay—the Court should follow established Fifth Circuit case law, apply the CAFA home state exception, and dismiss the case. *See* Dkt. 24 at 9-10.

C. **Neutral principles cannot resolve Plaintiffs' claims, which require ecclesiastical abstention.**

The parties agree that the ecclesiastical abstention doctrine extends broadly to protect against intrusion into religious issues ranging from doctrinal disputes to matters of church governance. *See* Dkt. 24 at 11; Dkt. 30 at 8. That is why dismissal is required: Plaintiffs' claims necessarily touch on the religious doctrine and practice of tithing and intrude in Gateway's internal affairs and administration. *See* Dkt. 24 at 11-15.

Plaintiffs do not dispute that tithing is purely ecclesiastical, that it is a "core purpose" of Gateway, that Gateway's elders possess sole authority over receipt and distribution of tithing, or that all Gateway members agree to submit to the decisions of church elders. *See* Dkt. 24 at 11-13. Instead, they argue the Court can resolve their claims based on neutral principles of law without infringing on ecclesiastical issues. *See* Dkt. 30 at 6-13. But the mere fact that they have alleged fraud is not enough to evade ecclesiastical abstention.[1] It is still an open question whether Texas law applies the neutral principles doctrine outside of church property disputes. *See In re Diocese of Lubbock*, 624 S.W.3d 506, 513 (Tex. 2021). And even when the doctrine applies, it is "narrowly

---

[1] In fact, under their own argument, Plaintiffs' breach of contract claims must be dismissed because they do not fit within the two tort-based "exceptions" to ecclesiastical abstention cited by Plaintiffs. *See* Dkt. 30 at 8-9.

PAGE 4

drawn to avoid inhibiting the free exercise of religion or imposing secular interests on religious controversies." *Id.* Thus, courts must not only consider whether neutral principles exist but also whether their application "would impose civil liability upon a church for complying with its own internal rules and regulations or resolving a religious matter." *Id.*

That is exactly what would happen here. The live complaint is clear: Plaintiffs unequivocally seek a return of their tithes. *See* Dkt. 9 at ¶¶ 54, 68-82. Their claims thus unavoidably implicate: (1) biblical doctrine viewing tithing as an act of worship and offering to God, and (2) internal church policies empowering elders to receive and distribute tithing donations and prohibiting distribution to individuals. *See* Dkt. 24 at 11-15. To resolve the claims, the Court will have to determine whether an offering to God can nonetheless be refunded (and thus an act of worship revoked) and whether a believer could reasonably rely on a promise to refund such an offering. In ordering any relief, the Court will necessarily insert itself in and directly override the elders' distribution rules and decisions. Similarly, Plaintiffs' reliance on statements in sermons will require the Court to assess the symbolic and doctrinal meaning of those sermons. The Court is both ill-equipped to make such determinations and barred from doing so. *See* Dkt. 24 at 11-15.

The decisions in *Gaddy* and *Huntsman* do not change the analysis. *See* Dkt. 30 at 11-12. *First*, both cases have since been superseded. *See id.* at 12 (*Huntsman* panel decision vacated); *Gaddy v. Corp. of the President of the Church of Jesus Christ of Latter-day Saints*, 665 F. Supp. 3d 1263, 1300 (D. Utah 2023) (dismissing all claims with prejudice). *Second*, both cases rely on narrow readings of the ecclesiastical abstention doctrine inconsistent with Supreme Court precedent. *Compare Huntsman v. Corp. of the President of the Church of Jesus Christ of Latter-day Saints*, 76 F.4th 962, 968-69 (9th Cir. 2023) (claims did not rely on or interpret church teachings or beliefs), *and*

*Gaddy*, 665 F. Supp. 3d at 1286 n.208 (claims did not touch on truth or falsity of church teachings), *with* Dkt. 24 at 11 (Supreme Court precedent applies doctrine to "any attempt . . . to dictate or even to influence" religious matters). Plaintiffs provide the Court with no way to avoid the unconstitutional entanglement that awaits any attempt to navigate this inherently religious dispute. The Court should apply the ecclesiastical abstention doctrine and dismiss the case.

II. **Plaintiffs' mere recitation of the elements of their fraud claims fails to satisfy the requirements of Rules 9(b) and 12(b)(6).**

A. **The fraud claims lack the particularity required to survive dismissal.**

Rather than address their multiple failures to comply with Rule 9(b), Plaintiffs double down on their check-the-box approach, merely reciting and asserting compliance with the elements of their fraud claim without citing the Complaint. *See* Dkt. 30 at 13-15. They do not address multiple deficiencies in the required "who, what, where and how" of their fraud claim, including: (1) the inconsistencies between the claimed statements and the contents of the Gateway website and the context of the Tikkun Global Conference, (2) the absence of any individualized allegations of knowledge or intent, (3) the lack of any allegations regarding when and where the alleged statements were made, and (4) the failure to provide allegations supporting knowledge and intent. *See* Dkt. 24 at 15-17. Instead, they rely on bald assertions, allegedly missing videos, and other materials outside the Complaint, which cannot replace the absence of concrete allegations in the Complaint. *See Dragoslavic v. Ace Hardware Corp.*, 274 F. Supp. 3d 578, 582 (E.D. Tex. 2017) ("Matters or theories raised in a response are not part of the pleadings and do not supplement the allegations in the complaint." (cleaned up)). Nor can Plaintiffs' promises of discovery in the future satisfy their pleading requirements now. *See ABC Arbitrage Plaintiffs Group v. Tchuruk*, 291 F.3d 336, 349 (5th Cir. 2002) (under Rule 9(b), "the who, what, when, and where must be laid out *before*

access to the discovery process is granted" (emphasis in original)). Because Plaintiffs failed to meet the requirements of Rule 9(b), their fraud claim must be dismissed.

>  B.  **Plaintiffs cannot vaguely assert the discovery rule to salvage time-barred claims.**

Plaintiffs concede that the conduct relating to the Allocation Statements occurred before the relevant four-year limitations period, yet nevertheless attempt to escape dismissal under the discovery rule. *See* Dkt. 30 at 18; *see also* TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). But the Complaint fails to allege that the Plaintiffs recently discovered the alleged conduct. Dkt. 24 at 25. The Complaint states that Plaintiffs recently "sought transparency" and "inquired" into the use of tithed funds because of "Morris's resignation." Dkt. 9 ¶¶ 34-35. Plaintiffs never allege a recent discovery of financial impropriety and—even under the most generous reading—suggest nothing more than that Plaintiffs do not know how Gateway spends tithed funds. *See* Dkt. 9 ¶ 36.

Unable to escape the absence of facts in the live Complaint establishing recent discovery of the alleged conduct, Plaintiffs assert that unknown "plaintiffs later added to this case" will discover the allegations due to "publicity reported by the press." *See* Dkt. 30 at 18 & n.5. But that is insufficient to invoke the discovery rule. In Texas, "the discovery rule [is] a very limited exception to statutes of limitations," and applies "only when the nature of the plaintiff's injury is both inherently undiscoverable and objectively verifiable." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001) (internal quotation omitted). An injury is "not inherently undiscoverable" if a plaintiff could discover it "through the exercise of due diligence." *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011). Plaintiffs have failed to show that they were unable to discover the CPA's allegations through due diligence. Accordingly, the discovery rule does not

apply and Plaintiffs' claims arising from the Allocation Statements are time barred. *See Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988).

### III. Plaintiffs' breach of contract claims fail as a matter of law.

Plaintiffs' efforts to salvage their contract claims should be rejected. First, as explained in the Motion, Plaintiffs' claim for conspiracy to breach a contract is not actionable under Texas law. Dkt. 24 at 29; *see also Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 463 (5th Cir. 2003). Plaintiffs cite no law to the contrary in response.

As for limitations, Plaintiffs concede that the conduct relating to the Allocation Statements occurred more than 10 years ago and that the relevant limitations period is four years. *See* Dkt. 30 at 21-22; *see also* TEX. CIV. PRAC. & REM. CODE § 16.051. Plaintiffs formulaically invoke the discovery rule, *see* Dkt. 30 at 21-22, but the rule does not apply for the reasons discussed above, *see supra* Section II.B. Plaintiffs additionally fail to address whether the rule even covers breach of contract injuries under Texas and Fifth Circuit law. *See Sheet Pile, L.L.C. v. Plymouth Tube Co., USA*, 98 F.4th 161, 167 (5th Cir. 2024).

Finally, Plaintiffs fail to show either consideration or a definite offer.

**No Consideration.** Plaintiffs attempt to invent consideration supporting contractual claims relating to the Allocation Statements by arguing that the alleged statements *by Gateway* are sufficient to conclude that *the Plaintiffs* intended to condition their gifts to be allocated to specific causes. *See* Dkt. 30 at 19. Plaintiffs cite no authority holding that statements like the Allocation Statements can become part of a gift instrument. *See* TEX. PROP. CODE § 163.004(a) (charitable trust must hold funds "[s]ubject to the intent of a donor expressed in a gift instrument"). In any event, because tithes are unconditioned unless congregants expressly elect otherwise, and Plaintiffs' claims focus on general, unconditioned revenue, *see* Dkt. 24 at 12-20, the burden shifts

to Plaintiffs to demonstrate that they conditioned their gifts to Gateway. *See Eshelman v. True the Vote, Inc.*, 655 S.W.3d 493, 501 (Tex. App.—Houston [14th Dist.] 2022, no pet.). Here, Plaintiffs now claim that they cannot articulate the alleged conditions without seeking discovery into Morris' prior statements. *See* Dkt. 30 at 20.

Although Plaintiffs attack Gateway's reading of various statements demonstrating that the Money Back Statements were never enforceable promises, Dkt. 30 at 20-21, Plaintiffs never address the core legal point: A nonprofit organization cannot distribute donated money to private individuals absent a charitable cause. *See* Dkt. 24-3 at art. 4(d)-(e); *see also* 26 U.S.C. § 501(c). This law was easily discoverable to Plaintiffs at the time of the alleged statements. *See* TEX. BUS. ORG. CODE § 22.054(4). Plaintiffs' claims fail for lack of consideration.

**No offer.** The claims relating to the Money Back Statements also fail because Plaintiffs cannot articulate an offer of definite terms. Dkt. 24 at 27. Plaintiffs appear to agree, and state that they need to engage in discovery to determine the terms of verbal contracts to which they claim they are parties. *See* Dkt. 30 at 20. Yet Plaintiffs never address the fact that the only possible contractual term they allege in the live Complaint violates Texas's statute of frauds. *See* Dkt. 24 at 28. Texas law requires written documentation for contracts "not to be performed within one year" precisely to prevent plaintiffs from inventing binding contracts out of general statements years after the statements were uttered. TEX. BUS. & COM. CODE §§ 26.01(a), (b)(6). The Court should not allow Plaintiffs to invent such a contract here.

## IV.    The Court should deny Plaintiffs' meritless ancillary requests.

Plaintiffs' request to convert the Motion into a summary judgment motion contradicts Fifth Circuit law and should be rejected. Dkt. 30 at 22-23. The Court may properly consider the purportedly "extrinsic evidence" cited in the Motion and alluded to by Plaintiffs. Plaintiffs do not

dispute or even mention controlling case law permitting resolution of a Rule 12(b)(1) motion based on the complaint and both undisputed and disputed evidence provided by the parties. *See* Dkt. 24 at 9 (citing cases). Nor do they address black-letter law permitting reliance in a Rule 12(b)(6) motion on the complaint, generally known facts, and documents referred to by the complaint that are central to the plaintiff's claims. *See id*. at 3 n.1 (citing authorities). Because the donor information, Gateway Bylaws, and other evidence cited in the Motion fit squarely within these permitted categories of evidence, Plaintiffs' conversion request should be denied. *See Hill v. Estate of Hill*, 594 F. Supp. 3d 741, 759 (N.D. Tex. 2022) (Rule 12(d) does not authorize conversion of a Rule 12(b)(1) motion).

In a last-ditch effort to salvage their case, Plaintiffs request leave to file another amended complaint. *See* Dkt. 30 at 24-25. As an initial matter, Plaintiffs' failure to attach their proposed amended complaint is enough alone to deny leave. *See Roberts v. Davis*, 2019 WL 3997366, at *1 (E.D. Tex. Aug. 23, 2019). The Court should also deny the request as futile. No amendment can evade the reach of the CAFA home-state exception. And Plaintiffs' threatened RICO claim does not change the analysis because there is no cure for the unconstitutional intrusions on Gateway's religious teachings, practices, and internal affairs. The Court should deny Plaintiffs' unsupported, futile request to amend. *See Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F.4th 226, 232 (5th Cir. 2022) (affirming denial of leave as futile where plaintiffs "did not specify what amendments they wished to make [] or attach an amended pleading").

## CONCLUSION AND PRAYER

Gateway respectfully requests that this Court grant its Motion, deny Plaintiffs' ancillary requests, dismiss Plaintiffs' claims, and grant any other relief to which it may be justly entitled.

Respectfully submitted,

*/s/ Ronald W. Breaux*
Ronald W. Breaux
   Texas Bar No. 02937200
   Ron.Breaux@haynesboone.com
Bradley W. Foster
   Texas Bar No. 07283200
   Brad.Foster@haynesboone.com
Taryn M. McDonald
   Texas Bar No. 24088014
   Taryn.McDonald@haynesboone.com
Ryan Paulsen
   Texas Bar No. 24060397
   Ryan.Paulsen@haynesboone.com
Justin W. Manchester
   Texas Bar No. 24126965
   Justin.Manchester@haynesboone.com
**HAYNES AND BOONE, LLP**
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
214.651.5000 (phone)
214.651.5940 (fax)
-
Wendi L. Hodges
   Texas Bar No. 24045096
   Wendi@thechurchlawyers.com
Alison R. Haefner
   Texas Bar No. 24107796
   Ally@thechurchlawyers.com
**MIDDLEBROOK | GROUP, PLLC**
611 S. Main Street, Suite 500
Grapevine, Texas 76051
817.484.0214 (phone)
817.484.0194 (fax)
-
Shari D. Goggin
   Federal Bar No. 3169653
   sgoggin@rlattorneys.com
**RESNICK & LOUIS, P.C.**
1512 Center Street, Suite 100
Houston, Texas 77007
281.962.3676 (phone)

**COUNSEL FOR GATEWAY CHURCH**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record on December 23, 2024, pursuant to the Court's ECF filing system and the Federal Rules of Civil Procedure.

*/s/ Ronald W. Breaux*
Ronald W. Breaux
